[No. S095213. Aug. 5, 2002.]

BETTY JEAN MYERS, Plaintiff and Appellant, v.
PHILIP MORRIS COMPANIES, INC., et al., Defendants and
Respondents.

**COUNSEL**

Bourdette & Partners, Philip C. Bourdette and André P. Gaston for Plaintiff and Appellant.

Wartnick, Chaber, Harowitz & Tigerman, Harry F. Wartnick, Madelyn J. Chaber; Law Offices of Daniel U. Smith, Daniel U. Smith and Ted W. Pelletier for Patricia Henley, Leslie Whiteley and Leonard Whiteley as Amici Curiae on behalf of Plaintiff and Appellant.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Dennis Eckhart, Assistant Attorney General, and Peter M. Williams, Deputy Attorney General, as Amici Curiae on behalf of Plaintiff and Appellant.

Howard, Rice, Nemerovski, Canady, Falk & Rabkin and H. Joseph Escher III for Defendant and Respondent R.J. Reynolds Tobacco Company.

Munger, Tolles & Olson, Michael R. Doyen, Fred A. Rowley, Jr., Daniel P. Collins and Ronald L. Olsen for Defendant and Respondent Philip Morris Incorporated.

Sedgwick, Detert, Moran & Arnold and Frederick D. Baker for Defendant and Respondent Brown & Williamson Tobacco Corporation.

William L. Gausewitz for The Alliance of American Insurers, The American Insurance Association, The National Association of Independent Insurers, The National Association of Mutual Insurance Companies and The Reinsurance Association of America as Amici Curiae on behalf of Defendants and Respondents.

Fred Main for California Chamber of Commerce as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

**KENNARD, J.**—In 1995, the California Legislature found that "[t]obacco-related disease places a tremendous financial burden upon the persons with the disease, their families, the health care delivery system, and society as a whole," and that "California spends five billion six hundred million dollars ($5,600,000,000) a year in direct and indirect costs on smoking-related illnesses." (Health & Saf. Code, § 104350, subd. (a)(7).) To obtain compensation for the physical and mental suffering and staggering expenses inflicted by tobacco-related illness, users of tobacco products and their families have sought relief in our courts through product liability lawsuits against manufacturers and sellers of tobacco products. In dealing with those lawsuits, courts have not been free to apply ordinary principles of tort law because, as we shall explain, the Legislature has enacted statutes that directly control the extent to which our courts may award damages against tobacco companies in product liability actions.

The statutes at issue are two successive versions of section 1714.45 of California's Civil Code.[1] The first version, which we here sometimes refer to as the Immunity Statute, granted tobacco companies complete immunity in

---

[1]Further undesignated statutory references are to the Civil Code.

certain product liability lawsuits as of January 1, 1988.[2] (Added by Stats. 1987, ch. 1498, § 3, p. 5778.) The second version, which we here sometimes refer to as the Repeal Statute, rescinded that immunity 10 years later on January 1, 1998. (Stats. 1997, ch. 570, § 1.) The United States Court of Appeals for the Ninth Circuit has certified to us a question asking whether the Repeal Statute governs "a claim that accrued after January 1, 1998, but which is based on conduct that occurred prior to January 1, 1998." (*Myers v. Philip Morris Companies, Inc.* (9th Cir. 2001) 239 F.3d 1029, 1030 (*Myers*).)

Our answer is this: The Immunity Statute applies to certain statutorily described conduct of tobacco companies that occurred *during* the 10-year immunity period, which began on January 1, 1988, and ended on December 31, 1997. With respect to such conduct, therefore, the statutory immunity applies, and no product liability cause of action may be based on that conduct, regardless of when the users of the tobacco products may have sustained or discovered injuries as a result of that conduct. That statutory immunity was rescinded, however, when the California Legislature enacted the Repeal Statute, which as of January 1, 1998, restored the general principles of tort law that had, until the 1988 enactment of the Immunity Statute, governed tort liability against tobacco companies. Therefore, with respect to conduct falling *outside* the 10-year immunity period, the tobacco companies are not shielded from product liability lawsuits.

## I. FACTS

The Court of Appeals for the Ninth Circuit described the background of this case as follows: "Betty Jean Myers began smoking cigarettes in 1956 and continued to smoke heavily until 1997. Throughout this period, and until August of 1998, she also worked and lived in environments in which those around her smoked cigarettes. On April 8, 1998, Myers was diagnosed with lung cancer allegedly caused by her exposure to tobacco. On March 4, 1999, Myers filed a complaint in Tulare County Superior Court against Philip Morris and other defendant tobacco manufacturers (collectively, the 'Tobacco Manufacturers') alleging several claims, including strict liability, negligence, breach of implied warranties, fraud, and negligent misrepresentation." (*Myers, supra,* 239 F.3d at p. 1030.)

The Ninth Circuit's description continues: "After removing this case to the United States District Court for the Eastern District of California, the

---

[2]As this court has done in prior cases discussing this legislation, we use the term "immunity" rather loosely, without restricting it to its narrowest technical meaning, that is, "a complete defense . . . [that] does not negate the tort." (Black's Law Dict. (1996 pocket ed.) p. 298; see also *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 797, fn. 6 [268 Cal.Rptr. 753, 789 P.2d 934] [discussing the "immunity-privilege distinction"].)

Tobacco Manufacturers moved, on April 13, 1999, to dismiss Myers's complaint for failure to state a claim. On May 25, 1999, the district court granted the motion to dismiss, with leave to amend, on the ground that Cal. Civ. Code § 1714.45 barred Myers's actions for any injuries incurred prior to January 1998. On June 30, 1999, Myers amended her complaint to allege that she was exposed to secondhand cigarette smoke between January 1, 1998 and April 8, 1998. On July 19, 1999, the Tobacco Manufacturers again moved to dismiss Myers's complaint for failure to state a claim. On October 6, 1999, the district court again dismissed Myers's complaint for failure to state [a] claim, this time without leave to amend, on the grounds that she had conceded that her lung cancer was not caused by her exposure to secondhand smoke after January 1, 1998, and, again, that pre-1998 exposures were not actionable. Myers filed a timely notice of appeal to the Ninth Circuit." (*Myers, supra*, 239 F.3d at p. 1031.)

## II.  BACKGROUND

We start with a review of the Immunity Statute and two California cases that have construed that statute, *American Tobacco Co. v. Superior Court* (1989) 208 Cal.App.3d 480 [255 Cal.Rptr. 280], a decision of the state Court of Appeal, and *Richards v. Owens-Illinois, Inc.* (1997) 14 Cal.4th 985 [60 Cal.Rptr.2d 103, 928 P.2d 1181], a decision of this court.

### A.  *The Immunity Statute*

Enacted as part of the Willie L. Brown, Jr.—Bill Lockyer Civil Liability Reform Act of 1987, former section 1714.45 (the Immunity Statute) provided in full:

"(a) In a product liability action, a manufacturer or seller shall *not* be liable if:

"(1) The product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community; and

"(2) The product is a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, *tobacco*, and butter, as identified in comment *i* to Section 402A of the Restatement (Second) of Torts.

"(b) For purposes of this section, the term 'product liability action' means any action for injury or death caused by a product, except that the term does

not include an action based on a manufacturing defect or breach of an express warranty.

"(c) This section is intended to be declarative of and does not alter or amend existing California law, including Cronin v. J.B.E. Olson Corp., (1972) 8 Cal. 3d 121 [104 Cal. Rptr. 433, 501 P.2d 1153], and shall apply to all product liability actions pending on, or commenced after, January 1, 1988." (Stats. 1987, ch. 1498, § 3, pp. 5778-5779, italics added.)

We now discuss the two California decisions that have interpreted the Immunity Statute.

### 1. *American Tobacco Co. v. Superior Court*

The state Court of Appeal's 1989 decision in *American Tobacco Co. v. Superior Court, supra,* 208 Cal.App.3d 480 (*American Tobacco*), which was authored by Presiding Justice J. Anthony Kline, was the first to construe the Immunity Statute. In that case, the court described the Immunity Statute as the result of a " 'peace pact' " or "compromise between parties seeking and opposing comprehensive changes in California tort law who had been locked in a long political struggle that had reached [a] stalemate." (*American Tobacco, supra,* at pp. 486-487.) Those involved included major special interest groups such as insurers, physicians, manufacturers, and the plaintiff's lawyers. (*Id.* at p. 486.)[3] The Court of Appeal in *American Tobacco* characterized the Immunity Statute as so "poorly drafted" that "on its face[, it was] amenable to two diametrically opposed interpretations, each of which conflict[ed] in some way with the words" used by the Legislature. (*American Tobacco, supra,* at p. 485.) But legislative history, the court noted, indicated that the Immunity Statute's intent was to ensure that " 'high-cholesterol foods, alcohol, and *cigarettes* that are *inherently unsafe and known to be unsafe by ordinary consumers,* [were] not to be subject to product liability lawsuits.' " (*American Tobacco, supra,* at p. 487, italics added.) In light of that legislative intent, the Court of Appeal in *American Tobacco* concluded that the statutory immunity was very broad, providing "nearly complete" immunity for manufacturers and sellers of tobacco and the other enumerated products. (*Ibid.*)

---

[3]The compromise agreement reportedly is known as "the 'napkin deal' since it was hammered out by political adversaries"—(one side "wanting comprehensive changes in California tort law, the other wanting to maintain the status quo")—on a white cloth napkin in a Sacramento restaurant. (Moy, *Tobacco Companies, Immune No More—California's Removal of the Legal Barriers Preventing Plaintiffs From Recovering for Tobacco-related Illness* (1998) 29 McGeorge L.Rev. 761, 770.)

### 2. *Richards v. Owens-Illinois, Inc.*

In 1997, some eight years after the Court of Appeal's decision in *American Tobacco, supra*, 208 Cal.App.3d 480, we construed the Immunity Statute in *Richards v. Owens-Illinois, Inc., supra*, 14 Cal.4th 985 (*Richards*). Because *Richards* is central to answering the question the Ninth Circuit has certified to us, we discuss it in some detail.

The plaintiff in *Richards, supra*, 14 Cal.4th 985, was a former shipyard worker who sued several asbestos manufacturers, claiming that his exposure to asbestos fibers at various shipyard jobs had caused him to develop asbestosis, a severe respiratory injury. At trial, one asbestos manufacturer, defendant Owens-Illinois, Inc., presented evidence that the plaintiff had contributed to the development of his respiratory injury by smoking for more than 40 years. (*Id.* at p. 990.) The issue before this court was whether the trial court should have allowed Owens-Illinois to present its so-called tobacco company defense, which would have required the jury, in determining fault with respect to noneconomic damages (to compensate the plaintiff for pain and suffering), to apportion to tobacco companies some percentage of fault, thereby reducing the percentage of the noneconomic damages award attributable to Owens-Illinois. (*Id.* at p. 991.)

To decide this question, we considered the interplay between the Immunity Statute and section 1431 et seq., enacted by the California electorate in an initiative known as Proposition 51. Proposition 51 provided in part that "in a tort action governed by principles of comparative fault, a defendant shall not be jointly liable for the plaintiff's 'non-economic damages,' but shall only be severally liable for such damages 'in direct proportion to that defendant's percentage of fault.'" (*Richards, supra*, 14 Cal.4th at p. 988, quoting § 1431.2, subd. (a).) The specific question we addressed in *Richards* was this: "To the extent [the Immunity Statute] protects tobacco companies from direct 'liab[ility]' for harm caused by smoking, does it also preclude the allocation of proportionate 'fault' to absent tobacco companies in a smoker's suit for asbestos-related lung injury, in order to reduce the 'noneconomic' damages payable by the asbestos defendant under Proposition 51?" (*Richards, supra*, 14 Cal.4th at p. 988.)

We explained: "Though the [Immunity Statute] states only an exemption from direct 'liab[ility]' where specified conditions are met, the *express premise* which justifies this immunity is of a *broader nature*. This premise is that suppliers of certain products which are 'inherently unsafe,' but which the public wishes to have available despite awareness of their dangers, *should not be responsible in tort* for resulting harm to those who voluntarily

consumed the products despite such knowledge. With respect to injuries meeting the statute's requirements, that principle precludes the assignment of legal 'fault' to such suppliers *in all contexts*, including suits from which they are absent by law." (*Richards*, *supra*, 14 Cal.4th at p. 1002, italics added, original italics omitted.)

We pointed out that the Immunity Statute drew "its express inspiration from product liability principles" set forth in comment *i* to section 402A of the Restatement Second of Torts (Restatement), and these principles provided the premise for the statute. (*Richards*, *supra*, 14 Cal.4th at p. 999.)

We observed: "Section 402A of the Restatement proposes generally that when a manufacturer or distributor sells a product 'in a defective condition *unreasonably dangerous* to the user or consumer' ([Rest.] p. 347, italics added), and the product reaches that person, as expected and intended, without substantial change in its condition, the seller is 'subject to liability' for physical harm 'thereby caused to the ultimate user or consumer.' [¶] However, comment *i* asserts an important qualification of the general rule . . . . [It] makes clear that . . . '[t]he rule [of liability] applies *only* where the defective condition of the product makes it *unreasonably* dangerous to the user or consumer.' (Restatement, p. 352, italics added.) As comment *i* then explains, '[m]any products cannot possibly be made entirely safe for all consumption,' but if a product is pure and unadulterated, its *inherent* or *unavoidable danger*, commonly known to the community which consumes it anyway, does not expose the seller to liability for resulting harm to a voluntary user." (*Richards*, *supra*, 14 Cal.4th at p. 999.)

*Richards* added: "The clear premise of comment *i* is that no 'liability' arises [for the manufacture or distribution of a product that in its pure and unadulterated form poses for its voluntary users an inherent and unavoidable danger] because *there is no sound basis for liability*. In other words, comment *i* posits, a manufacturer or seller *breaches no legal duty* to voluntary consumers by merely supplying, in unadulterated form, a common commodity which cannot be made safer, but which the public desires to buy and ingest despite general understanding of its inherent dangers." (*Richards*, *supra*, 14 Cal.4th at p. 1000.)

Because it would have been "anomalous" for a supplier of tobacco products, "though immunized . . . from direct liability for providing an 'inherently unsafe' product to a knowing and voluntary consumer . . . [to] nonetheless be assigned 'fault' for doing so in an action between that same consumer and a third party defendant," we held in *Richards* "that to the extent [the Immunity Statute] afford[ed] tobacco suppliers immunity from

'liab[ility]' in direct actions against them, on grounds that *the immunized conduct breache[d] no duty and constitute[d] no tort*, the statute also preclude[d] indirect assignment of comparative 'fault' . . . to such entities for purposes of Proposition 51." (*Richards, supra,* 14 Cal.4th at pp. 1000-1001, italics added.)

In short, our unanimous decision in *Richards, supra,* 14 Cal.4th 985, made clear that between January 1, 1988, and December 31, 1997, when the Immunity Statute was in effect, supplying pure and unadulterated tobacco products to knowing and voluntary consumers of those products was not subject to tort liability because it *breached no legal duty and thus constituted no tort.*

### B. *The Repeal Statute*

Ten years after enactment of the Immunity Statute and some eight months after our decision in *Richards, supra,* 14 Cal.4th 985, the California Legislature enacted the Repeal Statute, which amended former section 1714.45 to rescind the statutory immunity for tobacco companies as of January 1, 1998.[4] When enacted, the Repeal Statute provided, and with one minor change still provides:

"(a) In a product liability action, a manufacturer or seller shall not be liable if both of the following apply:

"(1) The product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community.

"(2) The product is a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, and butter, as identified in comment *i* to Section 402A of the Restatement (Second) of Torts.

"(b) *This section does not exempt the manufacture or sale of tobacco products by tobacco manufacturers and their successors in interest from product liability actions,* but does exempt the sale or distribution of tobacco

---

[4]Earlier in the same legislative session, the California Legislature passed, as urgency legislation effective June 12, 1997, Assembly Bill No. 1603 (1997-1998 Reg. Sess.) (hereafter the Public Entity Amendment). That bill amended the Immunity Statute to allow for "an action brought by a public entity to recover the value of benefits provided to individuals injured by a tobacco-related illness caused by the tortious conduct of a tobacco company." (Former § 1714.45, subd. (d), as amended by Stats. 1997, ch. 25, § 2.) A third bill, regarding secondhand smoke (Sen. Bill No. 340 (1997-1998 Reg. Sess.)), was passed by the Legislature but vetoed by the Governor.

products by any other person, including, but not limited to, retailers or distributors.

"(c) For purposes of this section, the term 'product liability action' means any action for injury or death caused by a product, except that the term does not include an action based on a manufacturing defect or breach of an express warranty.

"(d) This section is intended to be declarative of and does not alter or amend existing California law, including Cronin v. J.B.E. Olson Corp., (1972), 8 Cal. 3d 121, and shall apply to all product liability actions pending on, or commenced after, January 1, 1988.

"(e) This section does not apply to, and never applied to, an action brought by a public entity to recover the value of benefits provided to individuals injured by a tobacco-related illness caused by the tortious conduct of a tobacco company or its successor in interest, including, but not limited to, an action brought pursuant to Section 14124.71 of the Welfare and Institutions Code. In such an action brought by a public entity, the fact that the injured individual's claim against the defendant may be barred by a prior version of this section shall not be a defense. This subdivision does not constitute a change in, but is declaratory of, existing law relating to tobacco products.

"(f) *It is the intention of the Legislature in enacting the amendments to subdivisions (a) and (b) of this section adopted at the 1997-98 Regular Session to declare that there exists no statutory bar to tobacco-related personal injury, wrongful death, or other tort claims against tobacco manufacturers and their successors in interest by California smokers or others who have suffered or incurred injuries, damages, or costs arising from the promotion, marketing, sale, or consumption of tobacco products.* It is also the intention of the Legislature to clarify that such claims which were or are brought shall be determined on their merits, without the imposition of any claim of statutory bar or categorical defense.

"(g) This section shall not be construed to grant immunity to a tobacco industry research organization." (§ 1714.45, as amended by Stats. 1997, ch. 570, § 1, italics added.)[5]

Through subdivisions (b) and (f), the Repeal Statute expressly rescinded the statutory immunity from product liability lawsuits for tobacco companies

---

[5]In 1998, the Legislature made nonsubstantive changes to the final sentence in subdivision (f) of the Repeal Statute. It now reads: "It is also the intention of the Legislature to clarify that those claims that were or are brought shall be determined on their merits, without the

that the Legislature had allowed 10 years earlier. Although the Repeal Statute retained the Immunity Statute's reference to comment *i* to section 402A of the Restatement, negating liability to voluntary users of certain common but inherently unsafe consumer products, the Repeal Statute in subdivision (a) omitted tobacco products from specified "inherently unsafe" products.

## III.  DISCUSSION

■  We now turn to the question that the Ninth Circuit has asked us to decide: "Do the amendments to Cal. Civ. Code § 1714.45 that became effective on January 1, 1998, apply to a claim that accrued after January 1, 1998, but which is based on conduct that occurred prior to January 1, 1998?" To answer this question we must determine how the Repeal Statute affects product liability suits against tobacco companies based on their activities as manufacturers and sellers of tobacco products before, during, and after the statutory immunity period.

In certifying the question, the Ninth Circuit noted plaintiff's contention that applying the Repeal Statute in her case would be a *prospective* rather than a *retroactive* application of that law because she was diagnosed with cancer on April 8, 1998, three months after January 1, 1998, the date on which the Repeal Statute took effect. We address that issue below.

### A.  *Whether Applying the Repeal Statute to Defendant Tobacco Companies' Conduct During the Immunity Period Would Be a Prospective or a Retroactive Application of That Statute*

■  As we said more than 50 years ago, a retroactive or retrospective law " 'is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute.' " (*Aetna Cas. & Surety Co. v. Ind. Acc. Com.* (1947) 30 Cal.2d 388, 391 [182 P.2d 159]; accord, *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1206 [246 Cal.Rptr. 629, 753 P.2d 585] (*Evangelatos*).) Similarly, the United States Supreme Court has stated: " '[E]very statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective.' " (*Landgraf v. USI Film Products* (1994) 511 U.S. 244, 269 [114 S.Ct. 1483, 1499, 128 L.Ed.2d 229].) Phrased another way, a statute that operates to "increase a party's liability for past conduct" is retroactive. (*Id.* at p. 280 [114 S.Ct. at p. 1505]; *Evangelatos, supra,* 44 Cal.3d at p. 1206.)

imposition of any claim of statutory bar or categorical defense." (§ 1714.45, subd. (f), as amended by Stats. 1998, ch. 485, § 38, underscoring indicates changes.)

As we explained earlier, while the Immunity Statute was in effect—from January 1, 1988, through December 31, 1997—no tortious liability attached to a tobacco company's production and distribution of pure and unadulterated tobacco products to smokers. (Former § 1714.45, as added by Stats. 1987, ch. 1498, § 3, p. 5778; *Richards, supra*, 14 Cal.4th at p. 1001.) But on January 1, 1998, the California Legislature, through its enactment of the Repeal Statute, terminated that statutory immunity. (§ 1714.45.) Here, plaintiff started smoking in 1956 and, some 41 years later, quit smoking in 1997. But during 10 of those 41 years, from January 1, 1988, to December 31, 1997, because of the Immunity Statute, the manufacture and sale of covered products were not tortious. Accordingly, to have the Repeal Statute govern product liability suits against tobacco companies for supplying tobacco products to smokers during the immunity period would indeed be a retroactive application of that statute because it could subject those companies to "liability for past conduct" (*Landgraf v. USI Film Products, supra*, 511 U.S. at p. 280 [114 S.Ct. at p. 1505]; see also *Evangelatos, supra*, 44 Cal.3d at p. 1206) that was lawful during the immunity period (*Richards, supra*, 14 Cal.4th at p. 1001). Such retroactive application is impermissible unless there is an express intent of the Legislature to do so. We explore that issue below.

B. *Whether the California Legislature Expressed an Intent That the Repeal Statute Govern Tobacco Companies' Liability During the Immunity Period*

Generally, statutes operate prospectively only. In the words of section 3 of California's Civil Code: "No part of [this code] is retroactive, unless *expressly* so declared." (Italics added.) The Ninth Circuit, in certifying the question to us, cited our decision in *Evangelatos, supra*, 44 Cal.3d at page 1208, when noting defendant tobacco companies' contention that "a retroactive application [of a statute] requires either 'express language or clear and unavoidable implication' from the California Legislature." (*Myers, supra*, 239 F.3d at p. 1032.) On that point, defendants are right. We explained in *Evangelatos*: " ' "[T]he first rule of [statutory] construction is that legislation must be considered as addressed to the future, not to the past. . . . The rule has been expressed in varying degrees of strength but always of one import, that a retrospective operation will not be given to a statute which interferes with antecedent rights . . . unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.' " ' " (*Evangelatos, supra*, 44 Cal.3d at p. 1207, quoting *United States v. Security Industrial Bank* (1982) 459 U.S. 70, 78-79 [103 S.Ct. 407, 412-413, 74 L.Ed.2d 235], italics omitted.) In the words of the United States Supreme Court, "the 'principle that the legal effect of conduct

should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.' " (*Landgraf v. USI Film Products, supra*, 511 U.S. at p. 265 [114 S.Ct. at p. 1497]; accord, *Hughes Aircraft Co. v. United States ex rel. Schumer* (1997) 520 U.S. 939, 946 [117 S.Ct. 1871, 1876, 138 L.Ed.2d 135].)

As the United States Supreme Court has consistently stressed, the presumption that legislation operates prospectively rather than retroactively is rooted in constitutional principles: "In a free, dynamic society, creativity in both commercial and artistic endeavors is fostered by a rule of law that gives people confidence about the legal consequences of their actions. [¶] It is therefore not surprising that the antiretroactivity principle finds expression in several provisions of our Constitution. The *Ex Post Facto* Clause flatly prohibits retroactive application of penal legislation. . . . The Fifth Amendment's Takings Clause[, and] [t]he Due Process Clause also protect[] the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's *prospective* application under the [Due Process] Clause 'may not suffice' to warrant its *retroactive* application." (*Landgraf v. USI Film Products, supra*, 511 U.S. at pp. 265-266 [114 S.Ct. at p. 1497], italics added; accord, *INS v. St. Cyr* (2001) 533 U.S. 289, 316 [121 S.Ct. 2271, 2288, 150 L.Ed.2d 347].)

Just as federal courts apply the time-honored legal presumption that statutes operate prospectively "unless Congress has clearly manifested its intent to the contrary" (*Hughes Aircraft Co. v. United States ex rel. Schumer, supra*, 520 U.S. at p. 946 [117 S.Ct. at p. 1876]), so too California courts comply with the legal principle that unless there is an "express retroactivity provision, a statute will *not* be applied retroactively unless it is *very clear* from extrinsic sources that the Legislature . . . must have intended a retroactive application" (*Evangelatos, supra*, 44 Cal.3d at p. 1209, italics added). California courts apply the same "general prospectivity principle" as the United States Supreme Court. (*Id.* at p. 1208.) Under this formulation, a statute's retroactivity is, in the first instance, a policy determination for the Legislature and one to which courts defer absent "some constitutional objection" to retroactivity. (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 244 [62 Cal.Rptr.2d 243, 933 P.2d 507].) But "a statute that is ambiguous with respect to retroactive application is construed . . . to be unambiguously prospective." (*INS v. St. Cyr, supra*, 533 U.S. at pp. 320-321, fn. 45 [121 S.Ct. at p. 2290]; *Lindh v. Murphy* (1997) 521 U.S. 320, 328, fn. 4 [117 S.Ct. 2059, 2064, 138 L.Ed.2d 481] [" 'retroactive' effect adequately authorized by a statute" only when statutory language was "so clear that it could sustain only one interpretation"].)

### 1. *Repeal Statute has no express retroactivity language*

█ In contending that the Repeal Statute is not retroactive, defendant tobacco companies contrast it with other California statutes that our Legislature has expressly made retroactive. (See § 1646.5 ["This section applies to contracts . . . entered into before, on, or after its effective date; it shall be fully *retroactive* . . ." (italics added)]; Gov. Code, § 9355.8 ["This section shall have *retroactive application* . . ." (italics added)].)

In addition, defendants point to language in the Repeal Statute's subdivision (e) as a clear indication that the Legislature did not intend the Repeal Statute to be retroactive. (§ 1714.45, subd. (e).) That provision incorporates the substance of an earlier amendment to the Immunity Statute, the Public Entity Amendment (see fn. 4, *ante*), which was intended to allow public entities to sue tobacco companies notwithstanding the statutory immunity. When first enacted, the Public Entity Amendment added to the Immunity Statute a provision, subdivision (d), which stated that in an "action brought by a public entity, the fact that the injured individual's claim against the defendant may be barred by *this section* shall not be a defense." (Former § 1714.45, subd. (d), as added by Stats. 1997, ch. 25, § 2, italics added.) But when that provision became subdivision (e) of the Repeal Statute, the Legislature rephrased it to state that a public entity's suit against a tobacco company would not be precluded by "the fact that the injured individual's claim against the defendant may be barred by a *prior version of this section.*" (§ 1714.45, subd. (e), as added by Stats. 1997, ch. 570, § 1, italics added.) The italicized language suggests that even after the January 1, 1998, effective date of the Repeal Statute, "a prior version" of that statute, namely the Immunity Statute, may continue to bar claims against tobacco companies brought by individual smokers.

Plaintiff insists that certain phrases in the Repeal Statute are express legislative declarations of retroactivity notwithstanding the absence of the term "retroactive" in that provision. When enacted, subdivision (f) of the Repeal Statute provided: "It is the intention of the Legislature in enacting the amendments to subdivisions (a) and (b) of this section adopted at the 1997-98 Regular Session to declare that *there exists no statutory bar* to tobacco-related personal injury, wrongful death, or other tort claims against tobacco manufacturers and their successors in interest by California smokers or others *who have suffered or incurred injuries*, damages, or costs arising from the promotion, marketing, sale, or consumption of tobacco products. It is also the intention of the Legislature to clarify that such claims which *were or are brought* shall be determined on their merits, without the imposition of any claim of statutory bar or categorical defense." (§ 1714.45, subd. (f), as added by Stats. 1997, ch. 570, § 1, italics added.)

Focusing on the italicized phrases in isolation, plaintiff asserts, as does the dissent, that they are express declarations of the California Legislature's intent to retroactively apply the statute repealing the tobacco companies' immunity from products liability lawsuits brought by smokers. We are not persuaded. Neither the italicized phrases nor section 1714.45, subdivision (f) as a whole states anything more than that the Repeal Statute rescinded any former statutory immunity for tobacco companies. But even were we to accept that proposed reading of subdivision (f), the Repeal Statute is, at best, ambiguous on the question of retroactivity because of the Legislature's reference in subdivision (e) (allowing public entities to sue tobacco companies) to "a prior version" of the statute as possibly precluding suits against tobacco companies by individual smokers. This ambiguity requires us to construe the Repeal Statute as "unambiguously prospective." (*INS v. St. Cyr*, *supra*, 533 U.S. at pp. 320-321, fn. 45 [121 S.Ct. at p. 2290].)

Furthermore, the time-honored presumption against retroactive application of a statute, as reflected in section 3 of the California Civil Code as well as in decisions by this court and the United States Supreme Court, would be meaningless if the vague phrases relied on by plaintiff and the dissent were considered sufficient to satisfy the test of a "clear[] manifest[ation]" (*Hughes Aircraft Co. v. United States ex rel. Schumer, supra*, 520 U.S. at p. 946 [117 S.Ct. at p. 1876]) or an " ' " 'unequivocal and inflexible' " ' " assertion (*Evangelatos, supra*, 44 Cal.3d at p. 1207, italics omitted) of the Repeal Statute's retroactivity. After a painstaking review of the entire Repeal Statute, we find it to be devoid of any express legislative intent of retroactivity. Although we agree with the dissent that "no talismanic word or phrase is required to establish retroactivity" (dis. opn. of Moreno, J., *post*, at p. 849), we do not agree there is language in the Repeal Statute of the unequivocal and inflexible statement of retroactivity that *Evangelatos* requires.

Interestingly, the Attorney General, in his role as amicus curiae for plaintiff, does not join plaintiff in urging this court to construe the Repeal Statute as retroactive. Instead, in an effort to avoid "the constitutional concerns inherent in retroactive laws," the Attorney General argues that the Immunity Statute did nothing more than codify the common law defense of assumption of risk, a statutory defense that the Legislature, by its enactment of the Repeal Statute effective January 1, 1998, eliminated for all trials after that date.

The Attorney General's argument disregards the logical basis of this court's 1997 decision in *Richards, supra*, 14 Cal.4th 985, 1001, which construed the Immunity Statute not as codifying an existing affirmative defense for trial but as declaring legally permissible and not wrongful certain

conduct of tobacco companies. Applying *Richards* here, we reject the Attorney General's interpretation of the Immunity Statute.

    2.   *Extrinsic sources provide no clear indication of legislative intent to apply the Repeal Statute retroactively*

In contending that the Repeal Statute's legislative history is a "very clear" indicator that the California Legislature intended the statute to apply retroactively, plaintiff points to a brief comment in a report of the Senate Judiciary Committee prepared for the April 8, 1997, hearing on the bill to enact the Repeal Statute. The comment appears under the heading "Prospective repeal only" and states: "Some concern has been expressed that [Senate Bill No.] 67 would apply only to causes of action arising on or after January 1, 1998, assuming it is enacted this year. In the absence of specific language in the legislation specifying retroactive application, a measure will operate prospectively only. . . ." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) Apr. 8, 1997, p. 3.) Plaintiff observes that just eight days later, an amendment added to the bill language stating that "*there exists no statutory bar* to . . . tobacco-related personal injury, wrongful death, or other tort claims by California smokers or others *who have suffered or incurred injuries*," and indicating "that such claims which *were or are brought*" should be determined on their merits. (Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Apr. 16, 1997, italics added; now § 1714.45, subd. (f).) Plaintiff characterizes this amendment as the Legislature's "direct response" to the expressed "concern" about retroactivity, and thus as comprising a "very clear" indication that the Repeal Statute was to apply retroactively. We are not persuaded.

As we observed earlier, a statute may be applied retroactively only if it contains express language of retroactivity *or* if other sources provide a clear and unavoidable implication that the Legislature intended retroactive application. (*Evangelatos, supra,* 44 Cal.3d at p. 1208.) Addressing in this section the latter ground, we conclude that plaintiff has not shown a clear and unavoidable implication of legislative intent to apply the Repeal Statute retroactively. The committee report that plaintiff cites merely states the general rule that legislation operates prospectively unless there is clear language of retroactivity; nothing in that report indicates that the Legislature desired retroactive application of the Repeal Statute. The April 16, 1997, bill amendment adding language to subdivision (f) of the Repeal Statute does not cure this omission, because the added language does not itself supply an unavoidable implication that the Legislature intended to subject tobacco companies to potential tort liability for conduct occurring during the 10-year period when the Immunity Statute declared that very conduct to be lawful.

Its addition to the Repeal Statute eight days after some unspecified person voiced concern about retroactivity suggests that subdivision (f) may have been "the product of a legislative compromise" (*Fremont Comp. Ins. Co. v. Superior Court* (1996) 44 Cal.App.4th 867, 874 [52 Cal.Rptr.2d 211]), a way for legislators with differing views on retroactivity to vote for the Repeal Statute. "Avoiding resolution of disputed points is one of the classic means by which legislators are able to achieve agreement on legislative text." (*Id.* at pp. 873-874; accord, *J.A. Jones Construction Co. v. Superior Court* (1994) 27 Cal.App.4th 1568, 1577 [33 Cal.Rptr.2d 206].)

Plaintiff also points to comments by the Repeal Statute's author that "tobacco companies may have deliberately manipulated the level of nicotine" in tobacco products and "waged an aggressive campaign of disinformation about the health consequences of tobacco use." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) Apr. 8, 1997, p. 2.) According to plaintiff, these comments reflect the Legislature's intent to remedy "past fraud" by tobacco companies by making the Repeal Statute retroactive. Not so.

Those comments were simply reasons given "in support of repeal" of the statutory immunity for tobacco companies (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) Apr. 8, 1997, p. 2); they did not at all address retroactivity of the Repeal Statute. ■ Moreover, we have repeatedly declined to discern legislative intent from comments by a bill's author because they reflect only the views of a single legislator instead of those of the Legislature as a whole. (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062 [48 Cal.Rptr.2d 1, 906 P.2d 1057]; *Grupe Development Co. v. Superior Court* (1993) 4 Cal.4th 911, 922 [16 Cal.Rptr.2d 226, 844 P.2d 545].)[6]

3. *Constitutional considerations reinforce our reading of the Repeal Statute as not having retroactive application*

■ Earlier we discussed the constitutional underpinnings of the presumption against a statute's retroactive application. That presumption has particular force in this case, in which retroactive application of the California Legislature's repeal of tobacco companies' statutory immunity from

[6]The dissent broadly asserts that these comments by the bill's author and similar remarks in a letter supporting passage of the Repeal Statute "suggest" that the 1987 enactment of the statutory immunity was "secured in part by deceptive representations by the tobacco companies about the lethal nature of their product." (Dis. opn. of Moreno, J., *post*, at p. 853 & fn. 2.) Neither these comments nor anything else in the record before us shows that the 1987 legislation was indeed a product of deception by tobacco companies. As an appellate court, we may not consider assertions of fact that are not supported by the record. (See *People v. Szeto* (1981) 29 Cal.3d 20, 35 [171 Cal.Rptr. 652, 623 P.2d 213].)

product liability lawsuits could expose them to huge monetary damages for conduct that occurred during the statutory immunity period when that conduct carried no tort liability.

Instructive on this point is the United States Supreme Court's recent decision in *Eastern Enterprises v. Apfel* (1998) 524 U.S. 498 [118 S.Ct. 2131, 141 L.Ed.2d 451] (*Apfel*), in which the high court invalidated a federal law that retroactively imposed on coal mining companies substantial financial obligations for the health care of their retired workers. In a plurality opinion, four of the nine justices concluded the law was an unconstitutional taking under the Fifth Amendment to the federal Constitution. (*Apfel, supra,* at p. 538 [118 S.Ct. at pp. 2153-2154] (plur. opn. of O'Connor, J.).) In his concurring opinion, Justice Kennedy concluded that the act violated the Fifth Amendment's due process clause by retroactively creating liability for past conduct. (*Apfel, supra,* at p. 549 [118 S.Ct. at p. 2159] (conc. opn. of Kennedy, J.).) He observed: "If retroactive laws change the legal consequences of transactions long closed, the change can destroy the reasonable certainty and security which are the very objects of property ownership. As a consequence, due process protection for property must be understood to incorporate our settled tradition against retroactive laws of great severity. Groups targeted by retroactive laws, were they to be denied all protection, would have a justified fear that a government once formed to protect expectations now can destroy them. Both stability of investment and confidence in the constitutional system, then, are secured by due process restrictions against severe retroactive legislation." (*Id.* at pp. 548-549 [118 S.Ct. at p. 2158] (conc. opn. of Kennedy, J.).)

In an earlier decision, *Landgraf v. USI Film Products, supra,* 511 U.S. 244, the high court questioned the constitutionality of legislation that retroactively would result in the imposition of punitive damages for particularly egregious conduct, suggesting it might violate the constitutional prohibition against ex post facto laws. (U.S. Const., art. I, § 9, cl. 3 [restricting federal government]; see also *id.,* art. I, § 10, cl. 1 [restricting state governments]; Cal. Const., art. I, § 9.) In the words of the high court: "The very labels given 'punitive' or 'exemplary' damages, as well as the rationales that support them, demonstrate that they share key characteristics of criminal sanctions. Retroactive imposition of punitive damages would raise a serious constitutional question." (*Landgraf v. USI Film Products, supra,* at p. 281 [114 S.Ct. at p. 1505].)

An established rule of statutory construction requires us to construe statutes to avoid "constitutional infirmit[ies]." (*United States v. Delaware & Hudson Co.* (1909) 213 U.S. 366, 407-408 [29 S.Ct. 527, 535-536, 53 L.Ed.

836]; *United States v. Security Industrial Bank, supra,* 459 U.S. 70, 78 [103 S.Ct. 407, 412]; see also *Curran v. Mount Diablo Council of the Boy Scouts* (1998) 17 Cal.4th 670, 727-728 [72 Cal.Rptr.2d 410, 952 P.2d 218] (conc. opn. of Kennard, J.).) That rule reinforces our construction of the Repeal Statute as prospective only.

C. *Whether the Immunity Statute Precludes Recovery for Defendants' Conduct Before the Immunity Period*

Plaintiff began smoking cigarettes in 1956 and continued to do so until 1997, a period of 41 years. For 10 years of this period—from January 1, 1988, through December 31, 1997—the Immunity Statute was in effect to shield tobacco companies from liability for personal injuries that their tobacco products caused to voluntary consumers. Because, as explained above, the Repeal Statute is not retroactive, plaintiff has no product liability claim against defendant tobacco companies for their conduct in manufacturing and distributing cigarettes during the statutory immunity period.

Regarding the portion of plaintiff's claim attributable to her use of cigarettes that defendant tobacco companies manufactured or distributed *before* the period of statutory immunity afforded those companies, defendants contend that the Immunity Statute shields them from liability. In support, they point out that the statute was expressly retroactive, covering during its effective period "all product liability actions pending on, or commenced after, January 1, 1988" (former § 1714.45, subd. (c), added by Stats. 1987, ch. 1498, § 3, p. 5779), whereas (as we hold here) the Repeal Statute was not retroactive and thus could not remove any of the protection conferred by the Immunity Statute. We reject defendants' contention.

Although the Repeal Statute has no retroactive effect, it nonetheless removed the protection that the Immunity Statute gave to tobacco companies for their conduct occurring *before* the Immunity Statute's effective date. This is so because a retroactive effect is one that "impair[s] rights a party possessed *when he acted.*" (*Landgraf v. USI Film Products, supra,* 511 U.S. at p. 280 [114 S.Ct. at p. 1505], italics added.) The Repeal Statute did not impair any rights that tobacco companies possessed *before* the immunity period. On the contrary, by abrogating the Immunity Statute, the Repeal Statute restored the law governing product liability for the manufacture or sale of tobacco products to what it had been before the January 1, 1988, effective date of the Immunity Statute.

Before January 1, 1988, general tort principles defined the extent of any tort liability that tobacco companies might have for manufacturing or distributing their tobacco products for sale to voluntary consumers. When, 10

years later, the California Legislature repealed the statutory immunity for tobacco manufacturers in product liability actions, it reinstated those general tort rules. This repeal did not "change the legal consequences" (*Apfel, supra,* 524 U.S. at p. 548 [118 S.Ct. at p. 2158]) of defendants' conduct in manufacturing or distributing tobacco products before the effective date of the immunity. Nor could defendants reasonably have relied upon the Immunity Statute before its enactment. (See *In re Marriage of Buol* (1985) 39 Cal.3d 751, 761 [218 Cal.Rptr. 31, 705 P.2d 354].) Accordingly, repeal of the Immunity Statute eliminated any retroactive effect it may have had, so that the tort liability, if any, that defendants could incur for their conduct before the effective date of the Immunity Statute is determined by applying general tort principles.

## IV. CONCLUSION

The Repeal Statute rescinding the tobacco companies' statutory immunity in certain product liability lawsuits contains no express retroactivity provision. Nor has the Legislature given any clear indication that it wanted the Repeal Statute to apply retroactively. Thus, the Immunity Statute continues to shield defendant tobacco companies in product liability actions but only for conduct they engaged in *during* the 10-year period when the Immunity Statute was in effect. The liability of tobacco companies based on their conduct *outside* the 10-year period of immunity is governed by general tort principles. We stress, however, that we are not here asked to decide, and do not decide, what liability, if any, defendants may have under those general tort principles.

George, C. J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

**MORENO, J.**—I respectfully dissent.

I agree with the majority that "to have the Repeal Statute govern product liability suits against tobacco companies . . . would indeed be a retroactive application of that statute . . . ." (Maj. opn., *ante,* at p. 840.) Unlike the majority, however, I believe both the statutory language and the legislative history of Civil Code section 1714.45[1] evince a clear legislative intent to apply the statute retroactively. I further conclude that such retroactive application would not raise serious questions of constitutionality. (Maj. opn., *ante,* at p. 845.)

Statutes are presumed to operate prospectively. (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208 [246 Cal.Rptr. 629, 753 P.2d 585]

---

[1]All statutory references are to the Civil Code unless otherwise indicated.

*(Evangelatos)*; § 3.) "Of course, when the Legislature clearly intends a statute to operate retrospectively, we are obliged to carry out that intent unless due process considerations prevent us. [Citation.]" *(Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507].) Whether the Legislature intended retroactive application of a statute requires an exercise in statutory interpretation to ascertain if, by " 'express language or clear and unavoidable implication,' " the presumption of prospective application has been overcome. *(Evangelatos, supra,* 44 Cal.3d at p. 1208.) As this formulation in *Evangelatos* suggests, no talismanic word or phrase is required to establish retroactivity. Rather, the question is whether, from the language employed in the statute, there plainly emerges a legislative intent for the statute to operate retrospectively. Moreover, even in the absence of an express retroactivity provision, a statute may still be applied retroactively if the Legislature's intention is sufficiently clear from such extrinsic sources as legislative history. *(Id.* at pp. 1208-1209.)

Contrary to the majority, I conclude that subdivision (f) of section 1714.45 (added by Stats. 1997, ch. 570, § 1; all references to the Repeal Statute are to the 1997 enactment) is a sufficiently unambiguous statement of the Legislature's intent that the Repeal Statute be given retrospective effect. In reaching this conclusion, I rely on the familiar principle of statutory construction that requires, in the first instance, consulting the words of the statute itself to ascertain legislative intent. *(Steketee v. Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46, 51 [210 Cal.Rptr. 781, 694 P.2d 1153].) "The court is required to give effect to statutes ' " 'according to the usual, ordinary import of the language employed in framing them.' [Citations.] 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose[ ]' [citation]; 'a construction making some words surplusage is to be avoided.' [Citation.]" ' " *(Id.* at p. 52.)

Subdivision (f) of section 1714.45 states: "It is the intention of the Legislature in enacting the amendments to subdivisions (a) and (b) of this section adopted at the 1997-98 Regular Session to declare that *there exists no statutory bar* to tobacco-related personal injury, wrongful death, or other tort claims against tobacco manufacturers and their successors in interest by California smokers or others who *have suffered or incurred* injuries, damages, or costs arising from the promotion, marketing, sale, or consumption of tobacco products. It is also the intention of the Legislature to clarify that those claims *that were or are brought shall be determined on their merits, without the imposition of any claim of statutory bar or categorical defense."* (Italics added.)

A statute speaks from the day it takes effect. *(Hersh v. State Bar* (1972) 7 Cal.3d 241, 245 [101 Cal.Rptr. 833, 496 P.2d 1201].) The inclusion of

persons who "have suffer*ed* or incurr*ed* injuries" as among those to whom the abolition of the statutory immunity applies cannot be understood to mean anything other than that the Legislature, speaking as of January 1, 1998, intended to eliminate immunity for past injury-producing conduct by the tobacco industry. This construction of section 1714.45, subdivision (f) is further supported by the next sentence, which declares an intent that "those claims that *were* or are brought shall be determined, . . . *without the imposition of any claim of statutory bar or categorical defense.*" (Italics added.) The ordinary meaning of this language plainly precludes assertion by the tobacco companies of a statutory bar or other categorical defense not only to claims which may be brought in the future ("are brought") but those based on past conduct ("were . . . brought") as to which the original enactment (Stats. 1987, ch. 1498, § 3, p. 5778; hereafter the Immunity Statute) might otherwise have applied.

The majority is "not persuaded" that these "phrases in isolation" express the Legislature's intent that the Repeal Statute should be retroactively applied. (Maj. opn., *ante,* at p. 843.) The majority asserts: "Neither the italicized phrases nor section 1714.45, subdivision (f) as a whole states anything more than that Repeal Statute rescinded any former statutory immunity for tobacco companies." (*Ibid.*) This conclusory statement, however, fails to suggest an alternative interpretation of the statute. In this respect, the majority's approach does not comport with the principle of statutory construction that requires a reviewing court to give significance, if possible, to every word and phrase of a statute and avoid a construction that renders some words surplusage. (*Steketee v. Lintz, Williams & Rothberg, supra,* 38 Cal.3d at p. 52.) The majority then goes on to state that, even "were we to accept that proposed reading of subdivision (f), the Repeal Statute is, at best, ambiguous on the question of retroactivity because of the Legislature's reference in subdivision (e) (allowing public entities to sue tobacco companies) to 'a prior version' of the statute as possibly precluding suits against tobacco companies by individual smokers." (Maj. opn., *ante,* at p. 843.) Having thus discerned this ambiguity, the majority would apply the rule that a statute ambiguous as to retroactive application is to be applied prospectively. As I point out elsewhere, however, subdivision (e) does not conflict with the legislative mandate in subdivision (f) that the Repeal Statute be applied retroactively but, rather, addresses another legislative concern entirely; the possibility that the courts might determine that constitutional considerations preclude retroactivity, in which event, the Legislature carved out in subdivision (e) an exemption for public entities. In my view, therefore, subdivision (e) does not create an ambiguity. I would also observe that, by construing these two subdivisions so as to create a apparent conflict between them, the majority's interpretation is contrary to the fundamental

principle of statutory construction that requires us, in construing legislation, "to harmonize its various elements without doing violence to its language or spirit." (*Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 788 [176 Cal.Rptr. 104, 632 P.2d 217].)

I find further support for my conclusion that the Legislature intended retroactive application of the Repeal Statute in the legislative history surrounding the addition of subdivision (f) to section 1714.45. This history strongly suggests that subdivision (f) was added in response to a concern that the statute might only apply prospectively.

Senate Bill No. 67, as originally proposed, did not contain what eventually became subdivision (f), nor any other declaration of legislative intent. (Sen. Bill No. 67 (1997-1998 Reg. Sess.) § 1, as introduced Dec. 11, 1996.) In anticipation of an April 1997 hearing on the bill, the Senate Judiciary Committee noted that "[s]ome concern has been expressed that [Senate Bill No.] 67 would apply *only to causes of action arising on or after January 1, 1998*, assuming it is enacted this year. In the absence of specific language in the legislature specifying retroactive application, a measure will operate prospectively only upon its enactment." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Feb. 14, 1997, italics added.) One week after this acknowledgement of concern about a prospective-only application of amendments as then drawn, the bill was amended further by the insertion of what would become subdivision (f). (Sen. Bill No. 67 (1997-1998 Reg. Sess.) § 1, subd. (d), as amended Apr. 16, 1997.)

The proximity of these events suggests that subdivision (f) was added to section 1714.45 in response to the concern expressed in the committee report. At minimum, that "the retroactivity question was actually consciously considered during the enactment process" (*Evangelatos, supra,* 44 Cal.3d at p. 1211) supports a conclusion that retroactivity was intended.

The majority, examining this legislative history, simply concludes that the addition of subdivision (f) "may have been" the product of legislative compromise that allowed legislators with "differing views on retroactivity to vote for the Repeal Statute." (Maj. opn., *ante,* at p. 845.) But no "differing views" are expressed in the committee report regarding retroactivity and I cannot agree with the majority's explanation of the report. The plain meaning of the language used in subdivision (f) and the legislative history seem to me to unmistakably document such intent.

To buttress the assertion that subdivision (f) does not mean what it says, the majority, like defendants, cites subdivision (e) of section 1714.45.

Subdivision (e) essentially reiterates an amendment to the Immunity Statute that exempted public entities from the statute. The original provision in the Immunity Statute stated that in an "action brought by a public entity, the fact that the injured individual's claim against the defendant may be barred by this section shall not be a defense." (§ 1714.45, former subd. (d), as amended by Stats. 1997, ch. 25, § 2, eff. June 12, 1997.) The current version in the Repeal Statute provides "[i]n the action brought by a public entity, the fact that the injured individual's claim against the defendant *may* be barred by a prior version of this section shall not be a defense." (§ 1714.45, subd. (e), italics added.)

The majority finds that the phrase "a prior version of this section" suggests that "even after the January 1, 1998, effective date of the Repeal Statute, 'a prior version' of that statute, namely the Immunity Statute, may continue to bar claims against tobacco companies brought by individual smokers." (Maj. opn., *ante*, at p. 842.) In my view, subdivision (e) of section 1714.45 simply reflects the Legislature's concern that, notwithstanding its intent that the Repeal Statute apply retroactively, the courts might decline to give retroactive effect to the statute based on due process or other constitutional concerns raised by retroactivity. (*Western Security Bank v. Superior Court, supra,* 15 Cal.4th at p. 243 ["Of course, when the Legislature clearly intends a statute to operate retrospectively, we are obliged to carry out that intent *unless* due process considerations prevent us" (italics added)].) Indeed, the majority touches upon these constitutional issues and while, in my view, they provide no basis to deny retroactive application of the Repeal Statute, the Legislature could not have forecast with absolute certainty whether its intent to apply the statute retroactively would survive a court challenge. This uncertainty by the Legislature is demonstrated by its use of the word "may." Therefore, the Legislature chose to make it clear that, at minimum, suits by public entities would not be precluded by judicial fiat. This interpretation harmonizes subdivisions (e) and (f), which, notably, the majority's approach does not. (*Wells v. Marina City Properties, Inc., supra,* 29 Cal.3d at p. 788 ["It is fundamental that legislation should be construed so as to harmonize its various elements without doing violence to its language or spirit."].)

Finally, the majority suggests that constitutional considerations reinforce its interpretation of the Repeal Statute as not having retroactive application. (Maj. opn., *ante*, at p. 845.) Specifically, the majority alludes to potential due process and ex post facto issues. The retroactive application of any statute must be vetted for constitutionality, but I do not agree that constitutional considerations support a conclusion of nonretroactivity. Nor are the cases cited by the majority persuasive in this respect. The concurring opinion of Justice Kennedy in *Eastern Enterprises v. Apfel* (1998) 524 U.S. 498,

548-549 [118 S.Ct. 2131, 2158-2159, 141 L.Ed.2d 451], states little more than the truism that retroactive laws must meet the test of due process. The majority's citation to dictum in *Landgraf v. USI Film Products* (1994) 511 U.S. 244 [114 S.Ct. 1483, 128 L.Ed.2d 229] on the ex post facto issue is equally general.

Retroactive application of a statute may be unconstitutional if, inter alia, it deprives a person of a vested right without due process of law. (*In re Marriage of Buol* (1985) 39 Cal.3d 751, 756 [218 Cal.Rptr. 31, 705 P.2d 354].) I am not convinced that the immunity conferred in this case, however, is a vested right. First, the immunity involved here was wholly a creation of statute, and its abolition does not affect the tobacco companies' right to assert common law defenses in product liability actions. (Cf. *Callet v. Alioto* (1930) 210 Cal. 65, 67-68 [290 P. 438] [statutory rights, unlike common law rights, not vested for purposes of retroactive application of a statute because "all statutory remedies are pursued with full realization that the legislature may abolish the right to recover at any time"].) Second, I question whether a statutory immunity secured in part by deceptive representations by the tobacco companies about the lethal nature of their product should be deemed a vested right under any circumstance.[2]

Even assuming, arguendo, that the Immunity Statute created a vested right, it is settled that "[v]ested rights are not immutable; the state, exercising its police power, may impair such rights when considered reasonably necessary to protect the health, safety, morals and general welfare of the people." (*In re Marriage of Buol, supra,* 39 Cal.3d at pp. 760-761.) "In determining whether a retroactive law contravenes the due process clause, we consider such factors as the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that

---

[2]The majority asserts that there is no proof in the record that the 1987 legislation was the product of deception by tobacco companies. (Maj. opn., *ante,* at p. 845, fn. 6.) At the time the Repeal Statute was proposed its author explained the need for the legislation was due in part to evidence that "the tobacco companies may have deliberately manipulated the level of nicotine" and also that "evidence shows the tobacco companies have systematically suppressed and concealed material information and waged an aggressive campaign of disinformation about the health consequences of tobacco use." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) Apr. 8, 1997, p. 2.) In the same report, the California Medical Association, identified as "one of the main participants" in the 1987 legislation stated in support of the bill that " '[o]ver the last decade we have learned much regarding the addictive nature of tobacco and the industry's intentional efforts to mislead the public on the health effects of tobacco. This, coupled with the courts' broad interpretation of the California statute, has precipitated the need to change that statute and remove tobacco's liability protections.' " (*Ibid.*) I submit that these remarks, particularly the comments of the California Medical Association which was a participant in the 1987 legislation, suggest that the tobacco companies did deceive the other parties to the legislative effort that resulted in the Immunity Statute.

reliance, and the extent to which the retroactive application of the new law would disrupt those actions." (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371].)

I submit that, if the due process issue actually arose, all these factors would weigh heavily in favor of finding that retroactive application of the Repeal Statute does not contravene the due process clause. The state has a substantial interest in seeing that victims of dangerous products are compensated for their injuries by the manufacturers of dangerous or defective products that are in the best position to provide such compensation. (*Safeway Stores, Inc. v. Nest-Kart* (1978) 21 Cal.3d 322, 330 [146 Cal.Rptr. 550, 579 P.2d 441] ["one of the principal social policies served by product liability doctrine is to assign liability to a party who possesses the ability to distribute losses over an appropriate segment of society . . ."].) The state has an equally substantial interest in protecting and promoting the health of Californians. These interests would be significantly advanced by retroactive application of the Repeal Statute.

The Repeal Statute restores the right of Californians suffering from smoking-related illnesses to pursue product liability actions against the tobacco companies. Such meritorious actions would properly compensate the victims and would also shift the costs for their care from the public health system, to the extent the victims rely on public health care, to the tobacco companies. Furthermore, such actions expose the life-threatening consequences of tobacco use, as well as the tobacco companies' deceptive practices in promoting the use of their products. In the past, such suits have helped create a popular repugnance toward the tobacco companies and their products that has, in turn, contributed to a decline in the amount of consumption of tobacco products, thus promoting the health of the populace and reducing health costs associated with tobacco use. Retroactive application of the Repeal Statute would serve both goals of victim compensation and reduction of the use of tobacco products. By contrast, the tobacco companies can claim little reliance on the decade-old Immunity Statute, since the claims ordinarily advanced in these kinds of suits involve conduct stretching back decades. Furthermore, as I observed, retroactive application of the Repeal Statute does not strip the tobacco companies of their common law defenses.

Briefly, the majority also suggests that retroactive application of the Repeal Statute could implicate the prohibition against ex post facto laws because of the potential availability of punitive damages. Again, however, the majority does not engage in an in-depth analysis that demonstrates retroactive application of the Repeal Statute *would* in fact violate the prohibition against ex post facto laws. Furthermore, the brief discussion of this

point in the case cited by the majority, *Landgraf v. USI Film Products, supra*, 511 U.S. 244, is dictum. (*Id.* at p. 281 [114 S.Ct. at pp. 1505-1506].) Assuming a punitive damages award might be deemed penal for purposes of the ex post facto clause, the clause applies only if the challenged law makes criminal conduct that was not criminal at the time the action was performed. (*Ibid.* ["Before we entertain [the ex post facto] question, we would have to be confronted with a statute that explicitly authorized punitive damages for preenactment conduct"]; *Collins v. Youngblood* (1989) 497 U.S. 37, 42 [110 S.Ct. 2715, 2719, 111 L.Ed.2d 30].)

The conduct engaged in by the tobacco companies that might support an award of punitive damages in the instant case stretches back far beyond the 10-year period during which the Immunity Statute was in effect. As the majority concludes elsewhere in the opinion, neither due process concerns nor the ex post facto clause shields the tobacco companies from liability, presumably including punitive damages, for conduct they engaged in prior to the enactment of the Immunity Statute in 1988. (Maj. opn., *ante*, at pp. 847-848.) The effect of the Repeal Statute in that case is simply to restore the status quo ante that existed before January 1, 1988. Since the tobacco companies' conduct that is the basis of the instant suit is a continuous course of action that encompasses several decades, I question whether a plausible ex post facto claim could be made. To do so the tobacco companies would be required to isolate specific acts that occurred during the immunity period and identify the percentage of a punitive damages award attributable to such conduct. This is not their position. Rather, they have argued that the Immunity Statute insulates them from *any* liability, including their pre-1988 conduct. (Maj. opn., *ante*, at p. 847.) Therefore, the ex post facto concern raised by the majority seems both theoretical and dubious and does not present a substantive reason for declining to carry out the Legislature's will by retroactively applying the Repeal Statute.

For all these reasons, therefore, I dissent.