[No. B141519. Second Dist., Div. Three. Dec. 5, 2002.]

DONALD SOUDERS et al., Plaintiffs and Appellants, v.
PHILIP MORRIS INCORPORATED et al., Defendants and Respondents.

[redacted]

COUNSEL

Weinreb, Weinreb & Mandell, Robert J. Mandell, Mara E. J. Burnett; James V. Jordan and Michael R. Hambly for Plaintiffs and Appellants.

Arnold & Porter, Maurice A. Leiter, James D. Layden, Navid Yadegar, Ronald C. Redcay, James F. Speyer, John Carlton, Angel L. Tang; Sedgwick, Detert, Moran & Arnold, Kevin Robert Costello, Frederick Baker and Ralph Campillo for Defendants and Respondents.

Carrie-Lee Coke for California Manufacturers and Technology Association as Amicus Curiae on behalf of Defendants and Respondents.

OPINION

PERLUSS, J.*—Plaintiffs and appellants Donald Souders, individually and as guardian ad litem for Sandra Souders, Barbara Souders, Ben Souders, Elizabeth Souders and Jessica Souders; Donald Souders, Jr.; David Souders; Ann Souders; and the Estate of Mary Schuler (the Souderses) appeal from a judgment of dismissal entered after the trial court sustained without leave to amend the demurrer of defendants and respondents Philip Morris Incorporated (Philip Morris) and Brown & Williamson Tobacco Corporation (B&W) to the personal injury and wrongful death causes of action in the complaint.

The sole question presented is whether the Souderses' claims for injuries and wrongful death allegedly caused by smoking, which accrued in 1999, but which are based on conduct that occurred prior to January 1, 1998, are barred by former Civil Code section 1714.45 (the Immunity Statute)[1] in light of the 1997 amendment to that section (the Repeal Statute) eliminating the statutory immunity from products liability actions previously accorded to-bacco manufacturers.

In *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828 [123 Cal.Rptr.2d 40, 50 P.3d 751] (*Myers*) the Supreme Court answered that question: "The Immunity Statute applies to certain statutorily described conduct of tobacco companies that occurred *during* the 10-year immunity period, which began on January 1, 1988, and ended on December 31, 1997. With respect to such conduct, therefore, the statutory immunity applies, and no product liability cause of action may be based on that conduct, regardless of when the users of the tobacco products may have sustained or discovered

---

*Associate Justice of the Court of Appeal, Second Appellate District, Division Seven, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All further statutory references are to the Civil Code unless otherwise indicated.

injuries as a result of that conduct. That statutory immunity was rescinded, however, when the California Legislature enacted the Repeal Statute, which as of January 1, 1998, restored the general principles of tort law that had, until the 1988 enactment of the Immunity Statute, governed tort liability against tobacco companies. Therefore, with respect to conduct falling *outside* the 10-year immunity period, the tobacco companies are not shielded from product liability lawsuits." (*Id.* at p. 832.)

Because the Souderses' personal injury and wrongful death causes of action allege conduct by Philip Morris and B&W that occurred prior to January 1, 1988, we reverse the judgment of dismissal.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The plaintiffs.*[2]

Donald Souders and his wife Mary Schuler smoked cigarettes manufactured by Philip Morris and B&W for more than 30 years, beginning sometime prior to 1969, when they were both minors. On July 12, 1999, Donald Souders was diagnosed with emphysema and terminal heart disease attributable to his smoking. Mary Schuler died on July 20, 1999 as a result of damage to her heart caused by smoking. Sandra, Barbara, Ben, Elizabeth, Jessica, Donald, Jr., David and Ann Souders are the children of Donald Souders and Mary Schuler and the surviving heirs of Mary Schuler.

2. *Proceedings in the trial court.*

The Souderses filed this action against Philip Morris and B&W, as well as several other tobacco manufacturers and retailers, on November 18, 1999.[3] The complaint contains causes of action for negligence, strict products liability and other torts, as well as claims for breach of express warranty and for violation of Business and Professions Code sections 17200 and 17500. The complaint alleges that Mary Schuler's death and Donald Souders's injuries were caused by smoking cigarettes manufactured by Philip Morris and B&W and that Philip Morris and B&W had engaged in wrongful conduct in connection with the manufacture and marketing of cigarettes dating from the 1950's.

Philip Morris and B&W demurred to the product liability causes of action on the ground that they were barred in their entirety by the provisions of

---

[2]The facts we recite are taken from the original complaint, which is the operative pleading before us. As we are required to do, we assume the truth of these allegations.

[3]Only Philip Morris and B&W were served with the complaint. None of the other defendants is a party to this appeal.

former section 1714.45. The trial court sustained the demurrer, ruling that the 1997 amendment did not apply retroactively to conduct that occurred prior to its January 1, 1998 effective date.

Although the trial court's tentative ruling had been to sustain the demurrer without leave to amend, at the request of the Souderses' counsel, the Souderses were granted leave to amend for the purpose of alleging wrongful conduct by Philip Morris and B&W occurring after January 1, 1998. The Souderses subsequently determined not to amend the complaint.

The parties stipulated that the trial court's tentative ruling to sustain the demurrer to the first, second, third, fourth, fifth, eighth, ninth and tenth causes of action without leave to amend could be entered as the order of the court.[4] The parties additionally stipulated that the only two remaining causes of action (the sixth and seventh) were dismissed with prejudice.

The order of dismissal was entered on May 3, 2000. The Souderses filed a timely notice of appeal.

3. *Our initial decision on appeal and the Supreme Court's transfer order.*

In a decision filed on March 7, 2001, we reversed the judgment of dismissal, holding amended section 1714.45 applied to personal injury and other tort causes of action against tobacco manufacturers that accrued on or after January 1, 1998. We further held there was no constitutional impediment to application of amended section 1714.45 to causes of action accruing after the Repeal Statute's effective date.

On May 16, 2001, the Supreme Court granted review and ordered briefing deferred *pending its* decision in *Myers.* On October 30, 2002, the Supreme Court transferred the case back to us "with directions to vacate [our] decision and to reconsider the cause in light of *Myers v. Philip Morris Companies, Inc.* [, *supra,*] 28 Cal.4th 828 and *Naegele v. R.J. Reynolds Tobacco Co.* (2002) 28 Cal.4th 856 [123 Cal.Rptr.2d 61, 50 P.3d 769]." (*Souders v. Philip Morris Inc.* (Oct. 30, 2002, S096570).)

---

[4] Philip Morris and B&W have advised this court that the eighth and ninth causes of action, brought under Business and Professions Code section 17500, were erroneously included in their notice of demurrer and the parties' subsequent stipulation for dismissal. The question whether Civil Code section 1714.45 applies to causes of action under Business and Professions Code section 17500 was not addressed either in the trial court or by the parties on this appeal. As requested by Philip Morris and B&W, the eighth and ninth causes of action are remanded to the trial court for further proceedings.

ISSUE

Does the Souderses' complaint state facts sufficient to constitute causes of action for personal injuries and other torts against Philip Morris and B&W under *Myers* and *Naegele v. R.J. Reynolds Tobacco Co, supra,* 28 Cal.4th 856 (*Naegele*)?

DISCUSSION

1. *Standard of review.*

■ In reviewing an order sustaining a demurrer, we independently review the complaint to determine whether the facts alleged state a cause of action under any possible legal theory. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) We must give the complaint a reasonable interpretation, "treat[ing] the demurrer as admitting all material facts properly pleaded." (*Ibid.*)

2. *Section 1714.45.*

a. *The original version of section 1714.45: the Immunity Statute.*

■ As originally enacted in 1987, effective January 1, 1988, section 1714.45 granted tobacco companies "complete immunity in certain product liability lawsuits . . . ." (*Myers, supra,* 28 Cal.4th at pp. 831-832.)[5] "[B]etween January 1, 1988, and December 31, 1997, when the Immunity Statute was in effect, supplying pure and unadulterated tobacco products to knowing and voluntary consumers of those products was not subject to tort liability because it *breached no legal duty and thus constituted no tort.*" (*Id.* at p. 837; see *American Tobacco Co. v. Superior Court* (1989) 208 Cal.App.3d 480, 487 [255 Cal.Rptr. 280] ["It was commonly understood that the measure

---

[5]As originally enacted, former section 1714.45 provided:

"(a) In a product liability action, a manufacturer or seller shall not be liable if:

"(1) The product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community; and

"(2) The product is a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, tobacco, and butter, as identified in comment i to Section 402A of the Restatement (Second) of Torts.

"(b) For purposes of this section, the term 'product liability action' means any action for injury or death caused by a product, except that the term does not include an action based on a manufacturing defect or breach of an express warranty.

"(c) This section is intended to be declarative of and does not alter or amend existing California law, including Cronin v. J.B.E. Olson Corp., (1972) 8 Cal. 3d 121 [104 Cal.Rptr. 433, 501 P.2d 1153], and shall apply to all product liability actions pending on, or commenced after, January 1, 1988." (Stats. 1987, ch. 1498, § 3, pp. 5778-5779.)

embodying section 1714.45, which enjoyed the active or at least tacit support of [the Association of California Insurance Companies, the Association for California Tort Reform, the California Medical Association, the California Trial Lawyers Association and the California Chamber of Commerce], would provide nearly complete immunity for manufacturers of the five enumerated products"].)

### b. *The 1997 amendment: the Repeal Statute.*

Effective January 1, 1998, section 1714.45 was amended to delete "tobacco" from subdivision (a), enumerating those consumer items entitled to statutory immunity from product liability actions, and to state explicitly that this section does not exempt the manufacture or sale of tobacco products by tobacco manufacturers from product liability actions. Additional changes were made to reflect the Legislature's intent in enacting this amendment.[6]

---

[6] As amended, section 1714.45 provided:

"(a) In a product liability action, a manufacturer or seller shall not be liable if both of the following apply:

"(1) The product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community.

"(2) The product is a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, and butter, as identified in comment i to Section 402A of the Restatement (Second) of Torts.

"(b) This section does not exempt the manufacture or sale of tobacco products by tobacco manufacturers and their successors in interest from product liability actions, but does exempt the sale or distribution of tobacco products by any other person, including, but not limited to, retailers or distributors.

"(c) For purposes of this section, the term 'product liability action' means any action for injury or death caused by a product, except that the term does not include an action based on a manufacturing defect or breach of an express warranty.

"(d) This section is intended to be declarative of and does not alter or amend existing California law, including Cronin v. J.B.E. Olson Corp., [*supra*,] 8 Cal. 3d 121, and shall apply to all product liability actions pending on, or commenced after, January 1, 1988.

"(e) This section does not apply to, and never applied to, an action brought by a public entity to recover the value of benefits provided to individuals injured by a tobacco-related illness caused by the tortious conduct of a tobacco company or its successor in interest, including, but not limited to, an action brought pursuant to Section 14124.71 of the Welfare and Institutions Code. In such an action brought by a public entity, the fact that the injured individual's claim against the defendant may be barred by a prior version of this section shall not be a defense. This subdivision does not constitute a change in, but is declaratory of, existing law relating to tobacco products.

"(f) It is the intention of the Legislature in enacting the amendments to subdivisions (a) and (b) of this section adopted at the 1997-98 Regular Session to declare that there exists no statutory bar to tobacco-related personal injury, wrongful death, or other tort claims against tobacco manufacturers and their successors in interest by California smokers or others who have suffered or incurred injuries, damages, or costs arising from the promotion, marketing, sale, or consumption of tobacco products. It is also the intention of the Legislature to clarify

Section 2 of Senate Bill No. 67 (1997-1998 Reg. Sess.) contained the Legislature's declaration that the 1997 amendment "restores those common law rules [for product liability actions] with respect to the manufacture or sale of tobacco products by tobacco manufacturers and their successors in interest." (Stats. 1997, ch. 570, § 2.) The 1997 amendment did not affect other, traditional liability defenses available to tobacco companies in responding to product liability lawsuits. (See Assem. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Apr. 16, 1997.)

3. *The Supreme Court decisions in Myers and Naegele.*

In *Myers* the Supreme Court considered the following question, certified to it by the United States Court of Appeals for the Ninth Circuit, "Do the amendments to Cal. Civ. Code § 1714.45 that became effective on January 1, 1998, apply to a claim that accrued after January 1, 1998, but which is based on conduct that occurred prior to January 1, 1998?" (*Myers v. Phillip Morris Companies, Inc.* (9th Cir. 2001) 239 F.3d 1029, 1030.) In answer to that question, the court first held that permitting product liability suits to proceed against tobacco companies for supplying tobacco products to smokers during the immunity period would constitute a retroactive application of the Repeal Statute, regardless of when the plaintiff's cause of action formally accrued. (*Myers, supra,* 28 Cal.4th at p. 840.) The court then held that the Legislature did not intend to apply the Repeal Statute retroactively (*id.* at pp. 840-845), and explained that constitutional considerations reinforced its reading of the Repeal Statute as not having retroactive application. (*Id.* at pp. 845-847.) Because the Repeal Statute is not retroactive, the court concluded the plaintiff Betty Myers has no product liability claim against the defendant tobacco companies for their conduct in manufacturing and distributing cigarettes during the statutory immunity period. (*Id.* at p. 847.)

Noting, however, that Myers began smoking cigarettes in 1956 and continued to do so until 1997 (*Myers, supra,* 28 Cal.4th at p. 847), the Supreme Court also held the Repeal Statute "removed the protection that the Immunity Statute gave to tobacco companies for their conduct occurring *before* the Immunity Statute's effective date." (*Ibid.*) "[B]y abrogating the Immunity Statute, the Repeal Statute restored the law governing product liability for the manufacture or sale of tobacco products to what it had been

---

that such claims which were or are brought shall be determined on their merits, without the imposition of any claim of statutory bar or categorical defense.

"(g) This section shall not be construed to grant immunity to a tobacco industry research organization." (Stats. 1997, ch. 570, § 1.)

Subdivisions (d), (e) and (f) of the current iteration of section 1714.45 include several nonsubstantive language and punctuation changes made by the Legislature in 1998. (Stats. 1998, ch. 485, § 38.)

before the January 1, 1988, effective date of the Immunity Statute. [¶] Before January 1, 1988, general tort principles defined the extent of any tort liability that tobacco companies might have for manufacturing or distributing their tobacco products for sale to voluntary consumers. When, 10 years later, the California Legislature repealed the statutory immunity for tobacco manufacturers in product liability actions, it reinstated those general tort rules." (*Id.* at pp. 847-848.)[7] Thus, plaintiff Myers was entitled to pursue her tort claims against the tobacco company defendants for their conduct prior to January 1, 1988 (and after Dec. 31, 1997, as well) under general tort law principles.[8]

■ Having decided in *Myers* that former section 1714.45 continues to provide immunity for tobacco companies in product liability actions for conduct during the 10-year period the Immunity Statute was in effect, in *Naegele,* the companion case to *Myers,* the Supreme Court considered what forms of conduct by tobacco companies come within the Immunity Statute's protection. (*Naegele, supra,* 28 Cal.4th at p. 860.) First, the court held actions for fraud, as well as for negligence and manufacture of an inherently unsafe product, are barred by the Immunity Statute's broad definition of product liability lawsuits, provided the lawsuit is seeking damages for personal injury or death caused by use of "pure and unadulterated" tobacco products. (*Id.* at pp. 863-864.) Therefore, an allegation that tobacco companies increased the nicotine content of their cigarettes through blended or high-nicotine tobacco does not *avoid* the bar of the Immunity Statute "because it does not allege the defendants exposed plaintiff to a risk *other than* those inherent in tobacco products." (*Id.* at p. 865.) Similarly, because allegations that tobacco companies lied about the addictive nature of smoking do not suggest that the plaintiff was exposed to dangers other than those inherent in cigarette smoking, any claims based on such allegations during the 10-year statutory immunity period (but not before or after that period) are barred by former section 1714.45. (*Naegele,* at p. 866.)

To the extent the plaintiff alleged the tobacco companies manipulated the addictive properties of their cigarettes through additives, however—for example, adding ammonia to the "nicotine delivery system"—the defendants are not protected from product liability lawsuits during the immunity period:

---

[7]During its effective period the Immunity Statute precluded "all product liability actions pending on, or commenced after, January 1, 1988" (former § 1714.45, subd. (c), added by Stats. 1987, ch. 1498, § 3, p. 5779), shielding tobacco manufacturers from liability for conduct *before,* as well as *during,* the statutory immunity period. (*Myers, supra,* 28 Cal.4th at p. 847; *Richards v. Owens-Illinois, Inc.* (1997) 14 Cal.4th 985, 991 [60 Cal.Rptr.2d 103, 928 P.2d 1181] [applying the statute in lawsuit by plaintiff who had smoked from 1941 to 1984].)

[8]The Supreme Court cautioned that it was not deciding "what liability, if any, defendants may have under those general tort principles." (*Myers, supra,* 28 Cal.4th at p. 848.)

"The essence of these allegations is that the defendant tobacco companies adulterated the cigarettes plaintiff smoked with additives that exposed him to dangers not inherent in cigarette smoking. Because, as we have explained, the statutory immunity does not shield a tobacco company from liability for injuries or deaths caused by something not inherent in the product itself, the Immunity Statute does not bar these claims." (*Naegele, supra*, 28 Cal.4th at p. 865.)

   4.   *The Souderses' complaint states causes of action for personal injuries and other torts under Myers and Naegele.*

■   The Souderses' personal injury and wrongful death causes of action allege conduct by Philip Morris and B&W beginning some time prior to 1969 and continuing through the beginning of the 10-year statutory immunity period of former section 1714.45. Accordingly, the Souderses may pursue each of those causes of action under general tort principles. (*Myers, supra*, 28 Cal.4th at p. 848.)

Under *Naegele* the Immunity Statute applies to the Souderses' claims for false representation (third cause of action) and deceit and fraudulent concealment (fourth cause of action) to the same extent it does to their negligence and strict product liability claims. (*Naegele, supra*, 28 Cal.4th at pp. 863-864.) Allegations that Philip Morris and B&W misrepresented the addictive nature of nicotine and developed and utilized high-nicotine tobacco in their product blends do not avoid the immunity bar for the period from January 1, 1988, through December 31, 1997. However, because the Souderses' claims assert misconduct by the tobacco companies prior to January 1, 1988, the demurrer to these causes of action should have been overruled. In addition, to the extent the Souderses have alleged defendants "add[ed] ammonia, or otherwise alter[ed] the PH of the tobacco, enhanced the delivery of nicotine, thereby increasing addiction and/or dependence" and thus have alleged Philip Morris and B&W exposed the Souderses to a risk other than those inherent in tobacco products, the Immunity Statute provides no protection for the defendants. (*Naegele*, at p. 865.)

<div style="text-align:center">DISPOSITION</div>

The judgment of dismissal is reversed. The trial court shall enter a new order overruling the demurrers to the first, second, third, fourth, fifth and tenth causes of action of the complaint. The trial court shall also correct its records to reflect that no demurrer was filed as to the eighth and ninth causes

of action, which remain pending against Philip Morris and B&W. The Souderses are to recover their costs on appeal.

Klein, P. J., and Aldrich, J., concurred.