Filed 10/14/20 (review denied 2/17/21; reposted with Supreme Court order and statement)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ALEXANDER IRWIN VALLIANT,<br><br>    Defendant and Appellant. | G058568<br><br>(Super. Ct. No. 14WF3768)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Derek Guy Johnson, Judge.  Affirmed.

Donald E. Landis, Jr. and Laura Vavakin for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael P. Pulos and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

Sharon Petrosino, Public Defender (Orange) and Sara Ross, Assistant Public Defender for Orange County Public Defender as Amicus Curiae on behalf of Defendant and Appellant.

\*          \*          \*

Alexander Irwin Valliant petitioned to recall his sentence and seek resentencing pursuant to Penal Code section 1170.91, subdivision (b),[1] a statute which authorizes such relief for military veterans who suffer from military-related trauma and substance abuse, and who did not have those factors considered as mitigating factors when they were originally sentenced.  The court denied his petition on the basis that section 1170.91, subdivision (b)(1)(B) (subdivision (b)(1)(B)) authorizes resentencing relief only for  persons who were sentenced before January 1, 2015.  On its face, this provision does not apply to Valliant who was sentenced in March of 2015.

Valliant, along with amicus curiae from the Orange County Public Defender's Office (amicus), argues the trial court erred in its interpretation of subdivision (b)(1)(B).  They contend that when properly understood, the subdivision extends resentencing relief to all veterans whose military-related trauma was not considered at their initial sentencing, without regard to when that sentencing took place.  Valliant suggests this broad construction is the only reasonable interpretation of subdivision (b)(1)(B), while amicus claims the language is "poorly drafted" and ambiguous, and urges us to resolve the purported ambiguity by examining the statute's purpose and legislative history.

We affirm the order.  Subdivision (b)(1)(B) unambiguously specifies that its resentencing relief is limited to cases in which "[t]he person was sentenced prior to January 1, 2015."  It further specifies that "[t]his subdivision shall apply retroactively, whether or not *the case was final* as of January 1, 2015" (italics added).  There is no ambiguity.  In the face of such an unequivocal statutory limitation, we have no authority to rewrite the statute even if we sympathize with the contention.

---

[1]     All further statutory references are to the Penal Code.

2

Valliant was charged with second degree robbery (count 1; §§ 211, 212.5, subd. (c)); criminal threats (count 2; § 422, subd. (a)); carrying a dirk or dagger (count 3; § 21310); carrying a loaded firearm in public (count 4; § 25850, subd. (a) & (c)(7)); and driving on a suspended license (count 5; Veh. Code, § 14601.1, subd. (a)), all arising out of a single incident in September 2014.

In March 2015, after an unsuccessful effort to transfer the case to the Veteran's Court, Valliant negotiated a disposition with the District Attorney. Valliant agreed to plead guilty to second degree robbery, and to admit he personally used a firearm during the commission of the robbery. In exchange, the District Attorney agreed to dismiss four remaining charges. The parties also agreed that Valliant would serve a prison term of 12 years.

Consistent with the terms of this agreement, the trial court sentenced Valliant to 12 years in prison. The sentence consisted of the low term of two years for the robbery, plus 10 years for personal use of a firearm.

Valliant apparently suspected he suffered from post-traumatic stress disorder (PTSD) at the time he entered his guilty plea and was sentenced, but it was not until 2017 that the Department of Veterans Affairs (VA) verified his PTSD and opioid abuse disorder, both stemming from his military service.

In April 2019, Valliant filed a petition for resentencing pursuant to sections 1170.91, 12022.5, subdivision (c), and 1170, subdivision (b). He asserted he was entitled to relief because his PTSD and substance abuse, both related to his military service, were not considered as a factor in mitigation when the court sentenced him for his earlier crimes. He contended that subdivision (b)(1)(B) applied not only to cases where "'[t]he person was sentenced prior to January 1, 2015,'" but also applied to cases "'whether or not the case was final as of January 1, 2015.'"

3

The trial court disagreed with Valliant's interpretation of the statute, concluding that section 1170.91, subdivision (b)(1)(A) and (B), limit the resentencing remedy to cases in which the challenged sentence was imposed before January 1, 2015. Because Valliant was sentenced after that date, the court denied his petition without otherwise addressing its merits.

## DISCUSSION

Valliant contends the court erred by interpreting subdivision (b)(1)(B) as providing no remedy for petitioners such as him, who were sentenced on or after January 1, 2015, but who were nonetheless unable to assert their military-related trauma or substance abuse as a required mitigating factor at sentencing.[2] Because that contention raises a pure issue of law, our review is de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71.)

The original version of section 1170.91 became effective on January 1, 2015, and required sentencing courts to consider any trauma, substance abuse, and mental health problems caused by a defendant's service in the United States military as mitigating factors weighing in favor of a low-term sentence. (§ 1170.91, subd. (a), enacted by Stats. 2014, ch. 163, § 2.) This statute was in effect when Valliant was sentenced, pursuant to the negotiated disposition, in March of 2015.[3]

---

[2] In framing the issue this way, we acknowledge Valliant's suggestion that his ability to rely on these mitigating factors at sentencing was hampered by the fact that his military-related PTSD and substance abuse were not officially recognized by the VA until years later. However, we need not address the contention as we conclude that neither the delayed confirmation of Valliant's military-related impairments, nor the fact that his sentence was imposed in accordance with a negotiated disposition, is relevant in determining whether the resentencing remedy is available to him.

[3] Valliant contends the statutory language identifying these required mitigating factors—later designated as subdivision (a) when section 1170.91 was amended in 2018—provides "independent, self-executing" authority for recall of his sentence. However, he fails to explain how this language authorizes the recall of his

4

In 2018, the Legislature amended section 1170.91, designating the original language as subdivision (a), and adding subdivision (b), which created a remedy for qualifying defendants who were sentenced before section 1170.91 went into effect. Thus, section 1170.91, subdivision (b), provides as follows: "(b)(1) A person currently serving a sentence for a felony conviction, whether by trial or plea, who is, or was, a member of the United States military and who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of his or her military service *may petition for a recall of sentence, . . . to request resentencing* pursuant to subdivision (a) *if the person meets both of the following conditions*: [¶] (A) The circumstance of suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the person's military service was not considered as a factor in mitigation at the time of sentencing. [¶] (B) *The person was sentenced prior to January 1, 2015.* This subdivision shall apply retroactively, whether or not the case was final as of January 1, 2015." (§ 1170.91, subd. (b)(1)(A) & (B), italics added.)

Hence, as explained in *People v. Bonilla-Bray* (2020) 49 Cal.App.5th 234, 238, (*Bonilla-Bray*) "[t]o be eligible for resentencing, a petitioner must meet the following criteria: [¶] He or she is currently serving a sentence for a felony conviction— whether by trial or plea (§ 1170.91, subd. (b)(1)); [¶] He or she served in a branch of the United States military (*ibid.*); [¶] As a result of his or her service, he or she suffers from sexual trauma, traumatic brain injury, posttraumatic stress disorder, substance abuse, or mental health problems (*ibid.*); [¶] The court did not consider those circumstances as a

---

sentence. Instead, Valliant relies on what is now subdivision (a) to argue that "[a]t a re-sentencing hearing, the Superior Court would now have to consider as a mitigating factor whether [he], as a United States military veteran, was [suffering from military-related PTSD or substance abuse]." We may agree. Nonetheless, the statute provides no authority for requiring the hearing Valliant now requests.

5

factor in mitigation at the time of sentencing (*id.*, subd. (b)(1)(A)); *and* [¶] *He or she was sentenced before January 1, 2015 (id.*, subd. (b)(1)(B))." (Italics added.)

Both Valliant and amicus disagree with *Bonilla-Bray*'s final criterion for resentencing eligibility, arguing that when properly understood, the resentencing remedy provided for in subdivision (b)(1)(B) is not restricted to "persons [who were] sentenced prior to January 1, 2015." Valliant and amicus acknowledge the first sentence of the subdivision, granting resentencing relief to those sentenced before January 1, 2015, is clear on its face. Nonetheless, both suggest that the second sentence of subdivision (b)(1)(B), which states "[t]his subdivision shall apply retroactively, whether or not the case was final as of January 1, 2015," demonstrates that resentencing authority extends to other cases as well. (§ 1170.91, subd. (b)(1)(B).) We cannot agree.

The rules of statutory construction are well-settled. "Our task in interpreting a statute 'is to ascertain and effectuate legislative intent. [Citations.]' [Citation.] In order to do so, '[w]e turn first to the words of the statute themselves, recognizing that "they generally provide the most reliable indicator of legislative intent." [Citations.] When the language of a statute is "clear and unambiguous" and thus not reasonably susceptible of more than one meaning, '""""there is no need for construction, and courts should not indulge in it.'""""" (*People v. Leal* (2004) 33 Cal.4th 999, 1007.)

However, rather than focus on the words of subdivision (b)(1)(B), Valliant argues the fact the second phrase—specifying the subdivision's retroactive application— is set apart in a separate sentence from the initial requirement that "[t]he person was sentenced prior to January 1, 2015," indicates the Legislature intended to "creat[e] two separate jurisdictional grants." He concludes the Legislature wanted to "make sure that all veterans, whether sentenced before or after January 1, 2015, could equally receive its re-sentencing grant." But Valliant cites no authority to support this argument. We also believe the argument is illogical for at least two reasons.

6

First, if we focus solely on the sentence structure of subdivision (b)(1)(B), rather than its actual words, we conclude Valliant's interpretation ignores the fact that the two sentences do not run parallel to each other, as would be expected if they were intended to operate as alternative grants of jurisdiction over two sets of cases. While the first sentence applies the resentencing remedy to those veterans whose original sentencing took place before January 1, 2015, the second sentence makes no similar provision for any other group of veterans. Rather, what it does—based on the words the Legislature chose—is define the retroactive effect of section 1170.91's newly added resentencing remedy. Since that is a separate subject matter from what is addressed in the first sentence of subdivision (b)(1)(B), it makes sense to us the Legislature would choose to separate the two.

Additionally, even if we were to agree the second sentence of subdivision (b)(1)(B) might reasonably be construed as an attempt to define a separate group eligible for resentencing relief, the only discernible members of that group would effectively subsume the group identified in the first sentence—amounting to a judicially construed exception that would consume the rule. In other words, the only potential "group" we can extract from the words of the second sentence would be the group of cases defined by "whether or not the case was final as of January 1, 2015." (§ 1170.91, subd. (b)(1)(B).) That "group" would not only include every case involving a person who was sentenced before January 1, 2015—the scope of cases defined in the first sentence of the subdivision—it would extend to all cases ever decided in California. Ever. If such sweeping coverage was the Legislature's aim, it could have more easily achieved its goal by eliminating any timing limitations on the court's resentencing authority—including the limitation set forth in the first sentence of subdivision (b)(1)(B).

We are obligated to avoid statutory constructions which render other provisions of the statute superfluous. (*People v. Arias* (2008) 45 Cal.4th 169, 180 ["'a construction that renders a word surplusage should be avoided'"].) The fact that

7

Valliant's proposed interpretation of the second sentence of subdivision (b)(1)(B) would render the first sentence surplusage, plus the fact such an interpretation is consistent with the actual words used, causes us to conclude it is unreasonable.

For similar reasons, we reject Valliant's contention that subdivision (b) must be construed in a manner that provides him relief because to do otherwise would deprive him of due process and equal protection of the laws—thus rendering it unconstitutional. (See *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 846 ["An established rule of statutory construction requires us to construe statutes to avoid 'constitutional infirmit[ies]'"].) We cannot construe the law in Valliant's favor unless he is able to demonstrate the law is reasonably susceptible of such a construction. He has failed to do so.

In any event, Valliant's claim of constitutionally unequal treatment is unpersuasive. His complaint is based on the notion that if the resentencing option is offered only to those veterans who were sentenced before January 1, 2015, it unfairly distinguishes between similarly situated veterans who *belatedly discovered* their military-related trauma after sentencing. As he explains, veterans who have belatedly discovered their mitigating trauma after sentencing, but were sentenced before January 1, 2015, would be entitled to petition for relief under the new subdivision, while those who have belatedly discovered their trauma, but were sentenced after that date (including him), are foreclosed. We reject the assertion because we cannot agree those groups are similarly situated.

Veterans who were sentenced before the original version of section 1170.91 went into effect on January 1, 2015, did not have an incentive to investigate the existence of military-related trauma or substance abuse because the law did not require those issues to be treated as mitigating factors in sentencing. However, once the statute went into effect, veterans were on notice that any military-related trauma or substance abuse would have to be treated as mitigation. Thus, these issues needed to be investigated prior to

8

sentencing; sentencing should be delayed if necessary, to ensure they had a full and fair opportunity to present evidence on the point.  Adding subdivision (b)(1)(B) to the statute gave veterans sentenced *before* January 1, 2015 the same incentive and opportunity to investigate and present the issue as the original version of the statute had given veterans sentenced after that date.  Such a scheme is not unfair or unequal.

Amicus does not echo Valliant's claim that the second sentence of subdivision (b)(1)(B) necessarily creates a separate grant of jurisdiction over a distinct group of cases.  Instead, it argues that "the insertion of the phrase 'shall apply retroactively'" in that sentence makes the subdivision as a whole "confusing, and subject to multiple interpretations"—i.e., that it creates ambiguity with respect to the requirement that a person must have been sentenced before January 1, 2015.  Amicus then suggests that the ambiguity must be resolved in Valliant's favor based on legislative history and the statute's purpose.  However, since we are unpersuaded by amicus's claim of ambiguity, we need not address the legislative history and statutory purpose arguments.

Amicus does not explain why statutory language that explicitly defines the subdivision's "retroactive effect" would create any ambiguity with respect to a separate sentence that specifically addresses its substantive scope.  Those are distinct matters. (See *In re Estrada* (1965) 63 Cal.2d 740, 748 (*Estrada*) [establishing rule that in the absence of contrary statutory language, a statute which mitigates punishment will generally be applied retroactively to all cases not yet final on the date it takes effect].)

The first sentence of subdivision (b)(1)(B) sets forth a substantive requirement for resentencing relief—that the person must have been sentenced before January 1, 2015—while the second sentence governs the retroactive effect of the provision, which authorizes that resentencing relief.[4]  We consequently reject amicus's assertion that the latter sentence creates an ambiguity in the former.

_____

[4]    This broad retroactivity provision, focusing on the date that section 1170.91 originally went into effect, makes sense.  Because the new statute amended existing

9

But even if we were to agree it was proper to interpret the two sentences in subdivision (b)(1)(B) as addressing a single subject, we would nonetheless conclude that amicus's proposed interpretation of their combined meaning is unreasonable. According to amicus, the combined provision "appears to indicate that individuals sentenced prior to January 1, 2015, as well as those individuals whose cases are not final as of January 1, 2015, are eligible for resentencing." However, in addition to ignoring a substantial part of the second sentence, that interpretation fails to acknowledge that the first phrase focuses on *sentencing* dates, while the second phrase focuses on *case finalit*y dates. Having failed to acknowledge that distinction, amicus fails to explain how its interpretation makes sense.

Amicus also asserts that we are obligated to incorporate the second sentence of subdivision (b)(1)(B) into our analysis of what the first sentence means because "stopping the analysis after the first sentence in this subdivision would render the remaining sentence superfluous and meaningless." But that assertion begs the question. It is only if we assume the second sentence is intended solely to illuminate the meaning of the first sentence—as opposed to having a separate purpose—that it would be rendered superfluous and meaningless.

As we have explained, the second sentence of subdivision (b)(1)(B) addresses the retroactive effect of the new subdivision, rather than its substantive scope—i.e., the category of cases eligible for resentencing relief. Thus, that sentence is in no way nullified if we confine our analysis of the subdivision's substantive scope to the first sentence. By contrast, as we have noted, an attempt to combine both sentences of the

_____

sentencing laws by mandating that a defendant's military-related trauma be considered as a mitigating factor, *Estrada* required that the statute be applied retroactively to all cases not final on that date. Thus veterans sentenced before January 1, 2015, but whose cases were not yet final on that date, would still have had the opportunity to seek reconsideration of their sentences based on section 1170.91.

10

subdivision into a single definition of the category of cases eligible for relief—to the extent that is possible—would actually nullify the first sentence. That is the result we are obligated to avoid.

Under these circumstances, we are obligated to enforce the subdivision in accordance with its clear terms unless we conclude that doing so would lead to "an absurd result that does not advance the legislative purpose." (*Gray Cary Ware & Freidenrich v. Vigilant Insurance Co.* (2004) 114 Cal.App.4th 1185, 1190; *California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340.) This "'exception should be used most sparingly by the judiciary and only in extreme cases else we violate the separation of powers principle of government. [Citation.] We do not sit as a "super-legislature."'" (*People v. Pecci* (1999) 72 Cal.App.4th 1500, 1507.)

In this case, we do not conclude that subdivision (b)(1)(B)'s limitation of resentencing relief to those veterans who were sentenced before January 1, 2015—the date section 1170.91 originally went into effect—is an absurd result. By providing a resentencing remedy to those veterans sentenced before that date, the Legislature ensured that all veterans were given the opportunity to claim the statute's mandatory mitigation benefit.

In closing, we wonder if the Legislature foresaw this result when it passed section 1170.91. While Valliant's position here may be unusual, we doubt it is unique. With that thought in mind, we invite the Legislature to revisit this issue and, if it believes it is appropriate to do so, to provide Valliant and any other veteran in a similar position, with statutory relief.

## DISPOSITION

The order is affirmed.

11

                                    GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.

Filed 2/17/21

Court of Appeal, Fourth Appellate District, Division Three - No. G058568

**S265734**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

_____

THE PEOPLE, Plaintiff and Respondent,

v.

ALEXANDER IRWIN VALLIANT, Defendant and Appellant.

_____

The petition for review is denied.

_____

*Chief Justice*

PEOPLE v. VALLIANT

S265734


Concurring Statement by Justice Liu


Alexander Irwin Valliant filed a petition to recall the sentence for his conviction of second degree robbery and for resentencing pursuant to Penal Code section 1170.91, subdivision (b).  Since 2015, section 1170.91 has required courts to consider as a factor in mitigation at sentencing whether "a defendant convicted of a felony offense is, or was, a member of the United States military who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder [(PTSD)], substance abuse, or mental health problems as a result of his or her military service."  (Pen. Code, § 1170.91, subd. (a); further statutory references are to this code.)  In 2018, the Legislature gave this statute retroactive effect, allowing military veterans who suffer from such military-related conditions, and who did not have those circumstances considered when initially sentenced, to petition to recall the sentence and be resentenced.  (§ 1170.91, subd. (b).)

To be eligible to file such a petition, however, the statute requires that any such military-related condition "was not considered as a factor in mitigation at the time of sentencing" and that "[t]he person was sentenced prior to January 1, 2015." (Pen.  Code, § 1170.91, subd. (b)(1)(A)–(B).)  Valliant was sentenced in March 2015 and therefore does not meet the latter requirement.  For this reason, the superior court denied his petition and the Court of Appeal affirmed.  (See *People v. Valliant* (2020) 55 Cal.App.5th 903.)

1

Yet it is undisputed that Valliant's military-related conditions — PTSD and opioid abuse disorder — were not considered during his sentencing in 2015. In fact, it was not until 2017 that the United States Department of Veterans Affairs (VA) verified that his conditions stemmed from his military service. Thus, Valliant is in the unfortunate position of not having had his military-related conditions considered at his initial sentencing while also being ineligible for resentencing pursuant to section 1170.91, subdivision (b).

I agree with the Court of Appeal that it is unlikely the Legislature specifically intended this result. (See *Valliant*, *supra*, 55 Cal.App.5th at p. 912 ["[W]e wonder if the Legislature foresaw this result when it passed section 1170.91. While Valliant's position here may be unusual, we doubt it is unique. With that thought in mind, we invite the Legislature to revisit this issue and, if it believes it is appropriate to do so, to provide Valliant and any other veteran in a similar position, with statutory relief."].) Indeed, the author of Assembly Bill No. 865 (2017–2018 Reg. Sess.), which made section 1170.91 retroactive, found it "[u]nfortunate[]" that section 1170.91 "does not apply to veterans convicted prior to January 1, 2015" and through the amendment sought to "ensure there is equal treatment of all veterans, not just those convicted after January 1, 2015." (Sen. Com. on Veterans Affairs, Analysis of Assem. Bill No. 865 (2017–2018 Reg. Sess.) as amended Apr. 30, 2018, pp. 4–5.) Yet, by requiring that the original sentencing occur prior to January 1, 2015, for an individual to be eligible for resentencing — irrespective of when it was determined that the trauma, mental health, or substance abuse conditions were a result of military service — section 1170.91, subdivision (b) fails to ensure equal treatment of all veterans.

The January 1, 2015 requirement also makes little sense as a policy matter. With respect to PTSD, for example, the scientific literature has recognized delayed onset PTSD, particularly among veterans, where symptoms can take time to fully manifest. (See, e.g., Yehuda et al., *Post-Traumatic Stress Disorder* (Oct. 8, 2015) 1 Nature Reviews Disease Primers 1, 9–10; Creamer et al., *PTSD Among Military Personnel* (Apr. 2011) 23:2 Internat. Rev. of Psychiatry 160, 161–162.) And for PTSD related to sexual trauma, "it may take years for one to recognize an incident as sexual trauma, and in some cases, a fragmented memory of the event may delay acknowledgment even more." (Kintzle et al., *Sexual Trauma in the Military: Exploring PTSD and Mental Health Care Utilization in Female Veterans* (2015) 12:4 Psychological Services 394, 398.) Moreover, it also takes time for conditions like PTSD to be diagnosed and to administratively establish a connection to military service. Although a veteran can file a claim with the VA to establish a service-connected condition or disability, "there is a tremendous backlog of claims at VA, and it can take many years for a claim to work its way through the system." (Derro, *Service-Connected Disability Claims Before the U.S. Department of Veterans Affairs: A Brief Tutorial* (Feb. 2015) 94:2 Mich. B.J. 26, 28, fn. omitted.) Thus, a strict time requirement in these circumstances can lead to arbitrary and inequitable results.

There has been some recognition by the Legislature of the need to address this issue. Assembly Bill No. 581 (2019–2020 Reg. Sess.), for instance, would have provided relief to veterans like Valliant. The bill recognized that "even though Section 1170.91 was in effect starting January 1, 2015, some defendants may not have benefitted from the change in law either because some were unaware of the change or because

3

evidence of the service-related trauma was not available or was unknown at the time of sentencing." (Sen. Com. on Veterans Affairs, Analysis of Assem. Bill No. 581 (2019–2020 Reg. Sess.) as amended Feb. 14, 2019, p. 3.) But that bill never became law, so I echo the Court of Appeal's call for renewed legislative attention to this issue.

**LIU, J.**