TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| | : | |
| OPINION | : | |
| | : | No. 23-101 |
| of | : | |
| | : | October 19, 2023 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| HEATHER THOMAS | : | |
| Deputy Attorney General | : | |

The HONORABLE SENATOR STEVEN M. GLAZER has requested an opinion on whether certain provisions of a recently-enacted law have retroactive application.

**QUESTION PRESENTED AND CONCLUSION**

Do the disclosure, recusal, and cure provisions of Senate Bill No. 1439 (amending Government Code section 84308) apply to political contributions made before January 1, 2023?

No, the disclosure, recusal, and cure provisions of Senate Bill No. 1439 (amending Government Code section 84308) do not apply retroactively to political contributions made before January 1, 2023.

**BACKGROUND**

Senate Bill 1439 (SB 1439) was signed into law in 2022 and became effective on January 1, 2023.[1]  The legislation amends Government Code section 84308, which

---

[1] Stats. 2022, ch. 848 (SB 1439), § 1, eff. Jan. 1, 2023.

1

appears in the Political Reform Act of 1974 (PRA).[2]  In general, section 84308 places restrictions on specified government agency officers who accept contributions of more than $250 from parties to, or participants in, agency proceedings involving "a license, permit, or other entitlement for use."[3]

Section 84308's "lookback" provision requires officers to disclose contributions greater than $250 made in the previous 12 months from parties or interested participants. Such officers must also recuse themselves from the aforementioned proceedings, unless the officers "cure" the otherwise disqualifying contribution by returning it within 30 days of when they knew or should have known about both the contribution and the proceeding.[4]  SB 1439 made several changes to section 84308.  Most significantly here, the section now applies to local elected officers who previously were exempted, thereby requiring many more government agency officers to comply with its lookback and other provisions than before.[5]  The question here is whether these newly-covered local elected

---

[2] Gov. Code, § 81000, et seq.  Legislative and other materials often refer to section 84308 as the Levine Act, so named for Assembly Member Mel Levine, who authored the bill that added that section to the PRA.  All further statutory references in the main text are to the Government Code.

[3] Gov. Code, § 84308, subds. (b) and (c).  "'License, permit, or other entitlement for use' means all business, professional, trade, and land use licenses and permits, and all entitlements for land use, all contracts (other than competitively bid, labor, or personal employment contracts), and all franchises."  (*Id*. at subd. (a)(5).)  The statute also imposes restrictions on parties to and participants in such proceedings.  (*Id*. at subd. (e).)

[4] Gov. Code, § 84308, subds. (c), (d)(1).

[5] SB 1439 third reading analysis, *supra*, at p. 1.  As enacted in 1982, section 84308 exempted legislative bodies such as city councils, county boards of supervisors, and the State Legislature, except as specified.  (See Assem. Bill No. 1040 (Reg. Sess. 1981-1982) § 1, subd. (d).)  The language evolved over time, and Sen. Bill No. 1439 amended section 84308 to eliminate an exception for local government agencies whose members are directly elected by the voters.  The State Legislature remains exempt, as well as the judicial branch of government, the Board of Equalization, and constitutional officers, as specified.  While this Opinion focuses upon how a retroactive application of SB 1439 would affect local elected officers' new obligations under the "lookback" provision, the bill made several other changes.  For example, expanding the section to include local elected officers also affects those who contribute to local elected officers.  Under both former and current section 84308, parties must disclose on the record when they have contributed to a government officer in the 12 months before the proceeding.  (Gov. Code, § 84308, subd. (e)(1).)  Because section 84308 now applies to an additional class of government officers than in the past, an additional class of donor must now disclose on the record.  SB 1439 also made changes to section 84308's treatment of contributions

2

officers are prohibited from participating in a proceeding that involves a license, permit, or other entitlement for use based on uncured contributions that they accepted before SB 1439 took effect on January 1, 2023.

The Fair Political Practices Commission (FPPC), which is the expert agency in interpreting the PRA, has considered this question and issued an opinion (the Kendrick Opinion) and formal regulations that both conclude the amendments made by SB 1439 do *not* apply to contributions made or accepted before January 1, 2023.[6] We now consider the same question. For the reasons that follow, we conclude that section 84308, as amended by SB 1439, does not apply retroactively to political contributions made prior to its enactment.[7]

---

made during a pending proceeding and after a final decision has been rendered. The legislation extended from three months to 12 months the period in which officers are prohibited from accepting such contributions after a final decision is rendered, and it added a means for officers to cure their acceptance of such contribution by returning it (or the portion exceeding $250) within 14 days of accepting, soliciting, or directing the contribution, whichever comes latest. (Sen. Rules Comm., Off. of Sen. Floor Analyses, third reading analysis, SB 1439 (2021-2022 Reg. Sess.), as amended Aug. 15, 2022, p. 1 (hereafter SB 1439 third reading analysis); see Gov. Code, § 84308, subds. (b), (d)(2)(A).)

[6] *In re Kendrick* (Fair Pol. Practices Com. Dec. 22, 2022) Opinion No. O-22-002: "Based on the statutory language and legislative history, there is no indication the Legislature intended SB 1439's 'lookback' periods to apply to contributions received and proceedings participated in prior to Section 84308's amended provisions taking effect. Absent express language otherwise, we find a local elected official is not prohibited from taking part in a proceeding involving a license, permit, or other entitlement for use based on contributions received before January 1, 2023. Similarly, a local elected official is not prohibited from receiving a contribution based on the official's participation in a license, permit, or other entitlement for use proceeding so long as the official's participation occurred before January 1, 2023." The present request for an Attorney General Opinion is limited to the first of these two questions. (See also Cal. Code Regs., tit. 2, § 18438.)

[7] During the drafting of this Opinion, SB 1439 was the subject of litigation in Sacramento County Superior Court. (*Family Business Association of California v. Fair Political Practices Commission*, Case No. 34-2023-00335169-CU-MC-GDS.) The Office of the Attorney General represented the Fair Political Practices Commission (FPPC) in that matter, which has now concluded. In that matter, plaintiffs sued defendants claiming SB 1439 was facially unconstitutional. They sought injunctive and declaratory relief against defendants on the following grounds: That the bill was an unconstitutional amendment of an initiative measure, and that the restriction on campaign contributions was an

3

**ANALYSIS**

This opinion request asks us to consider whether SB 1439's amendments to section 84308 operate retroactively. Subject to constitutional constraints, the Legislature generally may enact a statute that operates retroactively.[8] However, a statute is presumed to operate prospectively unless the Legislature has clearly indicated that it intends the statute to operate retroactively.[9] This presumption is a basic tenet of statutory interpretation rooted in long-standing legal doctrine. As the United States Supreme Court explained, "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted."[10] The California Supreme Court has thus held that, absent clear Legislative intent to the contrary, a statute is presumed to operate prospectively.[11]

But not every application of a statute to past events is "retroactive," as the term is used in the presumption.[12] Courts often conduct a threshold inquiry into whether a particular application of a statute would truly be "retroactive" before reaching and apply

---

[8] unconstitutional abridgment of First Amendment-protected political speech. Plaintiffs and defendants filed cross-motions for Judgment on the Pleadings in April 2023. On June 16, 2023, the Court entered its judgment in favor of defendants. Plaintiffs did not file an appeal.

[8] The Legislature's authority in this regard is not unlimited: The California and federal constitutions prohibit *ex post facto* laws, or laws that retroactively alter the definition of crimes or increase the punishment for criminal acts. (U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9; *People v. McKee* (2010) 47 Cal.4th 1172, 1193.) Laws that retroactively deprive a person of a vested property right without due process or interfere with contract rights may also be unconstitutional. (*Bouley v. Long Beach Memorial Medical Center* (2005) 127 Cal.App.4th 601, 609.)

[9] *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 307, italics added; see also *Western Security Bank v. Superior Court* (1997) 15 Cal. 4th 232, 243 (*Western Security Bank*) (stating the Legislature must "plainly" intend a statute to operate retroactively); *People v. Hayes* (1989) 49 Cal.3d 1260, 1274 (stating there must be a "clear and compelling implication" the Legislature intended a statute to operate retroactively).

[10] *Landgraf v. USI Film Products* (1994) 511 U.S. 244, 266; *McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 475 (*Landgraf*).

[11] *McHugh v. Protective Life Ins. Co.* (2021) 12 Cal.5th 213, 227-228 (*McHugh*).

[12] *Id.* at p. 227.

4

the presumption of prospective application.[13]  As the California Supreme Court has explained:

> The presumption against retroactivity is, at core, a canon to facilitate interpretation rather than an inexorable command.  [Citations omitted.]  In cases where the presumption is potentially implicated, we must consider both its overall role—helping guide us in our core endeavor of determining and giving full effect to a statute's underlying purpose—and the specific premise for applying it in that particular case.  [Citations omitted.]  . . . . These considerations influence the threshold question courts must answer before even applying the presumption against retroactivity:  Is the statutory change in question "'retroactive'" or "'prospective'"?  [Citation omitted.][14]

We will therefore begin by considering the threshold question of whether the proposed application of SB 1439 to contributions accepted before its enactment by previously exempted elected local officials would be "retroactive," for the purposes of the presumption.

**Applying SB 1439 to political contributions made before January 1, 2023, would be "retroactive" within the meaning of the presumption.**

A statutory change is retroactive, within the meaning of the presumption, when it "*significantly* alters settled expectations: by changing the legal consequences of past events, or vitiating substantial rights established by prior law."[15]  Put differently, a statute operates retroactively when it attaches "new legal consequences to events completed before its enactment."[16]  A statute may also operate retroactively when it "substantially affects existing rights and obligations."[17]  California courts have found retroactivity,

---

[13] 57 Cal.Jur.3d (2023) Statutes, § 30.

[14] *McHugh*, *supra*, 12 Cal.5th at p. 229.

[15] *McHugh*, *supra*, 12 Cal.5th at p. 230, original italics, see also *A.J. Fistes Corp. v. GDL Best Contractors, Inc.* (2019) 38 Cal.App.5th 677, 690-691 (*A.J. Fistes Corp.*).

[16] *Landgraf*, *supra*, 511 U.S. at p. 270. See also *Western Security Bank*, *supra*, 15 Cal.4th 232, 243 ("A statute has retrospective effect when it substantially changes the legal consequences of past events"); *California Trout, Inc. v. State Water Resources Control Board* (1989) 207 Cal.App.3d 585, 609 ("The test of retroactivity is whether [the statute] operates retroactively to materially alter the legal significance of a prior event. . . . Application of a statute is retroactive only when it gives a different and potentially unfair legal effect to actions taken in reliance on the preenactment law.")

[17] *A.J. Fistes Corp.*, *supra*, 38 Cal.App.5th at pp. 690-691; see also *K.M. v. Grossmont Union High School Dist.* (2022) 84 Cal.App.5th 717, 736; 57 Cal.Jur.3d (2023) Statutes,

within the meaning of the presumption, when a statute imposes a new duty because of past transactions, such as a new fiduciary duty between divorcing spouses that did not exist during the marriage.[18]

If a particular statutory change does not meet this standard, then a court considers its application to be "prospective" regardless of whether it is applied to past conduct.[19] For instance, statutes that clarify existing law are considered "prospective"—even if applied to prior conduct—because clarifying statutes, by definition, did not actually change existing law.[20] Such a statute would therefore not trigger the presumption.[21]

When determining whether a particular application of a statute would be retroactive within the meaning of the presumption, courts look at "the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity. However, retroactivity is a matter on which judges tend to have 'sound . . . instinct[s],' [citation] and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance."[22]

Turning to the question before us, we conclude that applying SB 1439 to pre-enactment contributions would be "retroactive" within the meaning of the presumption because this application would substantially affect local elected officials' obligations as they existed before the bill's enactment. As of January 1, 2023, the "lookback" provision—which requires government officers to disclose qualifying contributions and, if they do not cure such contributions by returning them, recuse themselves from the

---

§ 32.

[18] See, inter alia, *In re Marriage of Reuling* (1994) 23 Cal.App.4th 1428, 1437-1440; *In re Marriage Walker* (2006) 138 Cal.App.4th 1408 (*Walker*).

[19] *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 286-291; see also *Elsner v. Uveges* (2004) 34 Cal.4th 915, 936 ("However, this rule does not preclude the application of new procedural or evidentiary statutes to trials occurring after enactment, even though such trials may involve the evaluation of civil or criminal conduct occurring before enactment").

[20] *Department of Finance v. Commission on State Mandates* (2022) 85 Cal.App.5th 535, 573; *Western Security Bank*, *supra*, 15 Cal.4th at p. 243.

[21] *McHugh*, *supra*, 12 Cal.5th at p. 229.

[22] *Landgraf*, *supra*, 511 U.S. at p. 271; see also *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 230-231.

proceedings at issue—applies to local elected officers.[23]  Applying this change for 2023 proceedings based on contributions accepted in 2022 would substantially affect existing obligations by changing the legal significance of contributions those officers had accepted before the effective date of SB 1439, and adding new duties with respect to those contributions.

Local elected officers such as city councilmembers have the authority to participate in the licensure and other proceedings at issue in section 84308.[24]  Further, the Political Reform Act allows such officers to collect and spend contributions, within certain limits.[25]  While these local elected officers were certainly required to comply with the Act in 2022, their obligations under the Act at that time did *not* include the restrictions set forth in section 84308.  After SB 1439, however, a local elected officer who accepts a contribution has a new duty to comply with section 84308.

The situation here is analogous to what the Court of Appeal confronted in *In re Marriage of Walker*.[26]  During their marriage, the two divorcing spouses in that case had a statutory obligation to furnish certain financial information to one another only on demand.[27]  A 2002 bill changed this duty to require spouses to furnish this information without demand.[28]  The court held that this was a change in the law that had retroactive effect, reasoning that it imposed greater duties on partners than what had existed under prior law.[29]  Similarly, we believe that local government officers newly subject to section 84308 have greater duties placed upon them today than they had under prior law.

Courts also look generally at fairness, notice, and settled expectations when determining retroactivity.  Before SB 1439's expansion of the "lookback" provision to local elected officers, those officers were allowed to receive and spend contributions *and* participate in certain proceedings.  SB 1439 imposed a new requirement to recuse or timely return the contribution, thus potentially preventing officers from participating in certain proceedings in which they previously could have participated.  Officers did not have much advance notice of their changing duties given that the bill was not signed into law until September 2022.  And although the statute allows officers to cure a past

---

[23] Gov. Code, § 84308, subds. (a)(3), (c) and (d)(1).

[24] See, e.g., Gov. Code, § 37101.

[25] Gov. Code, §§ 81000, et seq.

[26] *Walker*, *supra*, 138 Cal.App.4th at pp. 1419-1422.

[27] *Ibid.*

[28] *Id.* at pp. 1419-1422, 1427-1428.

[29] *Ibid.*

7

contribution, retroactive application of SB 1439 would still disadvantage officers from using funds they were allowed to accept at the time.[30]

Because applying the changes made by SB 1439 to pre-enactment contributions would be retroactive within the meaning of the presumption, we must next determine whether the Legislature clearly intended SB 1439 to operate retroactively. If such clear intent is lacking, we must apply the presumption and conclude that SB 1439 may apply only prospectively.

**The California Legislature did not clearly intend SB 1439 to operate retroactively.**

The Legislature clearly intends a statute to operate retroactively if there is explicit language in the statute or if extrinsic sources "provide a clear and unavoidable implication that the Legislature intended retroactive application."[31] To discern Legislative intent, we first look at the statute's plain language.[32] If that language is ambiguous, we then look at other indicia of intent, including legislative history, the overall statutory scheme, and context.[33]

### a. Text of section 84308 and SB 1439

While there are no "talismanic" words or phrases that would automatically give a statute retroactive application, the California Supreme Court has held that the use of the word "retroactive" or a statement that a section shall have "retroactive application" constitutes an express intention of retroactive application.[34] On the other hand, without an express legislative statement, mere evidence the Legislature was aware of the context of a statutory amendment and the necessity for the change is not (without more) enough to show that the Legislature intended retroactive application, particularly if the

---

[30] Some commenters have also stated that if enough local elected officers are forced to recuse a particular proceeding, based on contributions they accepted in 2022 and are unable to cure in 2023, local legislative bodies might fail to meet a quorum and therefore be unable to carry out business. (Natalie C. Kalbakian, RWG Law, Comment Letter on Attorney General Opinion 23-101, April 18, 2023; Nancy Young, Mayor of the City of Tracy, Emailed comment on Attorney General Opinion 23-101, March 3, 2023 (hereinafter Young comment).)

[31] *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 844 (*Myers*); see also *Bullard v. California State Automobile Association* (2005) 129 Cal.App.4th 211, 217 (*Bullard*); *People v. Whaley* (2008) 160 Cal.App.4th 779, 793-794 (*Whaley*).

[32] *Whaley*, *supra*, 160 Cal.App.4th at p. 793-794.

[33] *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587-590 (*Bouquet*).

[34] *Myers*, *supra*, 28 Cal.4th at p. 842.

Legislature fails to enact the bill as urgency legislation.[35]  And statements from a single legislator, even if that legislator is the bill's author, are not by themselves enough to find intent on behalf of the Legislature as a whole.[36]  In the end, "'a statute that is ambiguous with respect to retroactive application is construed . . . to be unambiguously prospective [citations].'"[37]

Turning to the issue before us, we observe that the text of section 84308 does not explicitly address retroactivity, much less express an intent that the statute operate retroactively.  There is no indication in either the lookback provision, nor in the change to the definition of "agency" that allowed local elected government officers to be subject to this section, that a contribution received "within the preceding 12 months" includes those made in 2022, for officers who weren't already subject to section 84308 at that time.  The statute is simply silent on that point.

### b.  *Legislative history and the overall statutory scheme*

A review of SB 1439's legislative history similarly fails to yield clear evidence of legislative intent regarding the statute's retroactive application.  While the bill file from the Senate Committee on Elections and Constitutional Amendments included copies of stakeholder correspondence to the FPPC concerning this topic and dated after SB 1439 was signed into law, there is nothing in the legislative intent materials we reviewed that leads to a "clear and unavoidable implication" that the Legislature intended SB 1439 to operate retroactively.[38]

---

[35] *Bullard*, *supra*, 129 Cal.App.4th at pp. 218-219; see also *Industrial Indemnity Co. v. Workers' Comp. Appeals Board* (1978) 85 Cal.App.3d 1028, 1031-1032 (*Industrial Indemnity*) ("Something more than a desirable social objective served by the legislation is thus required if we are to infer a legislative intent of retroactivity.  We perceive that factor to be the necessity of retroactivity to the purpose of the legislation or some factor extraneous to the purpose alone which leads to the same conclusion").

[36] *Myers*, *supra*, 28 Cal.4th at p. 845; but see *Bouquet*, *supra*, 16 Cal.3d at pp. 587-591 (holding that when the bill's author argues before the Legislature during debates surrounding enactment of the bill that the bill is intended to apply retroactively; the author alludes to that argument during negotiations to secure the votes to pass the bill; and after passing the bill, the Legislature passes a resolution incorporating a letter from the author that indicates the amendment is intended to operate retroactively, the Legislature did intend the legislation at issue to operate retroactively.)

[37] *Myers*, *supra*, 28 Cal.4th at p. 841.

[38] *Myers*, *supra*, 28 Cal.4th at p. 844.  We reviewed all of the legislative analyses posted online for Sen. Bill No. 1439 at Bill Text - SB-1439 Campaign contributions: agency

9

Legislative documents discussed the issue that SB 1439 intended to address. The Legislature enacted SB 1439 as non-urgency legislation to apply the same "pay-to-play" prohibitions to local elected officers that already existed for specified elected and appointed state officers, and specified local officers not directly elected by the voters, when approving a license, permit, or entitlement for use.[39] These concerns were echoed by materials found in the bill files provided to us.[40]

One could argue that, to best address these concerns, SB 1439 must reach contributions made in 2022 to ensure that a locally elected officer discloses a contribution, then recuses or cures as soon as possible after the January 1 effective date of SB 1439. Again, however, courts have found that the mere fact that the Legislature intended to address an ongoing problem is not enough to find that the Legislature intended its statute to operate retroactively.[41] After all, a great number of statutes exist to address existing, ongoing, or past problems, yet for reasons of fairness and fair notice, the law still strongly presumes statutes operate prospectively. The desire to fix an existing problem is not, by itself, enough to find the Legislature intended retroactive application.[42]

And there are other indications here that the Legislature did not clearly intend SB 1439 to operate retroactively. Assuming for the sake of argument that SB 1439 were retroactively applicable, parts of SB 1439 would fail to function as intended if applied to

officers (as of July 31, 2023). We also reviewed bill files from the Assembly Committee on Elections, the Senate Committee on Elections and Constitutional Amendments, and the Senate Committee on Appropriations for Sen. Bill No. 1439.

[39] Sen. Rules Comm., Off. of Sen. Floor Analyses, unfinished business analysis, SB 1439 (2021-2022 Reg. Sess.), as amended Aug. 15, 2022, pp. 6-7.

[40] See, inter alia., Sky Allen, I.E. United, letter to Sen. Steven Glazer, April 29, 2022; David Burke, Citizens Take Action, letter to Assembly Member Chris Holden, July 8, 2022; Jonathan Mehta Stein, California Common Cause, letter to Assem. Member Isaac G. Bryan, June 27, 2022, "End the Local Government 'Pay-to-Play' Loophole," California Common Cause." These materials were found in the committee bill file for SB 1439, Assembly Committee on Elections, as provided by that committee on March 27, 2023, and the bill file for SB 1439, Senate Committee on Elections and Constitutional Amendments, as provided by that committee on July 12, 2023.

[41] *Industrial Indemnity*, *supra*, 85 Cal.App.3d at pp. 1031-1032.

[42] *Bullard*, *supra*, 129 Cal.App.4th at p. 219; see also *Industrial Indemnity*, *supra*, 85 Cal.App.3d at p. 1032: The fact that retroactive application would expand the class of people subject to the legislation is not, by itself, enough to find that retroactive application is integral to the operation when this expansion does not inhibit the operation of the statute.

pre-enactment contributions.[43]  Officers who accepted a potentially disqualifying contribution in 2022 may participate in an otherwise-disqualified 2023 proceeding if they return—i.e., "cure"—the contribution within 30 days of the time they knew, or should have known, about both the contribution and the proceeding.[44]  As some commenters observe, however, even if an officer were to meet the legal requirements to take advantage of the curing provision in 2023, some officers may nonetheless be unable to cure:  contributions received in 2022 may have already been spent, meaning that officers may not have the money to return (or would need to raise more money).[45]

It appears to us that at least some officers newly bound by section 84308 may not, as a practical matter, be able to cure a disqualifying contribution if they were required to comply with changes made by SB 1439 for contributions accepted in 2022.  Because we are instructed to presume that every word in a statute has meaning, and because statutes must be considered as a whole, we find it unlikely that the Legislature would include a curing provision if it intended a statute to operate in a way that prevented at least some of the covered officials from curing.

### c.  *Historical and contemporaneous administrative interpretation*

Finally, historical and contemporaneous administrative interpretation support our view that the Legislature did not clearly intend SB 1439 to operate retroactively.  "'[W]hen a statute is susceptible of more than one interpretation, we will consider an administrative interpretation of the statute that is reasonably contemporaneous with its adoption.  [Citation.]'"[46]  Courts are more deferential to formally promulgated regulations than to agency interpretation, and will follow them if they are within the lawmaking authority delegated by the Legislature, and if the regulation is reasonably necessary to implement the purpose of the statute.[47]  On the other hand, court review of an agency interpretation of a statute "is contextual:  Its power to persuade is both

---

[43] *Krupnick v. Duke Energy Morro Bay* (2004) 115 Cal.App.4th 1026, 1030 (every word of a statute must be given meaning, and courts should avoid a construction that would make some words "surplusage."); *Bonnell v. Medical Board* (2003) 31 Cal.4th 1255, 1261 (when construing statutory language, we must consider the language in context of the entire statutory scheme).

[44] Gov. Code, § 84308, subd. (d)(1); Cal. Code Regs., tit. 2, § 18438.7.

[45] Young comment, *supra*; Thomas W. Hiltachk, Bell, McAndrews & Hiltachk, letter to Chair Miadich and Commissioners Baker, Gomez, Wilson and Wood, FPPC, Nov. 10, 2022, pp. 3-4.

[46] *Bernard v. City of Oakland* (2012) 202 Cal.App.4th 1553, 1565.

[47] *Yamaha Corp. of America v. State Bd. Of Equalization* (1998) 19 Cal.4th 1, 6-8, 10-11.

circumstantial and dependent on the presence or absence of factors that support the merit of the interpretation."[48] Courts consider "two broad categories of factors relevant to" assessing "the weight due an agency's interpretation: those 'indicating that the agency has a comparative interpretive advantage over the courts,' and those 'indicating that the interpretation in question is probably correct.' [Citation.]"[49] In the first category are factors that assume the agency has expertise and technical knowledge, while the second category includes evidence of consistent or long-standing interpretation, evidence the interpretation was contemporaneous with legislative enactment, and indicia that senior agency officials have carefully considered the issue.[50]

Both agency interpretation and formally promulgated regulations are at issue here. Shortly after SB 1439 was signed into law, stakeholders asked the FPPC for guidance regarding actions made in 2022.[51] As mentioned, the FPPC issued a formal opinion (the Kendrick Opinion) shortly before SB 1439 took effect stating that the bill did *not* apply to 2022 actions and contributions for locally elected officials.[52] The opinion reasoned that there was no express language in the bill regarding retroactivity; that the Legislature is presumed to know that the FPPC had interpreted section 84308 in this manner in the past; that there are officers who would not be able to cure pre-enactment contributions; and that a retroactive application could have negative practical effects on agencies' ability to govern.[53]

Further, the FPPC has recently promulgated a formal regulation stating that the amendments made to section 84308 by SB 1439 do not apply to proceedings participated in, or contributions made to or accepted, solicited, or directed by an officer prior to January 1, 2023.[54] This regulation is substantively similar to one the FPPC promulgated when section 84308 was first enacted in 1982.[55] A month after the 1982 legislation was

---

[48] *Id.* at p. 7.

[49] *Id*. at p. 12.

[50] *Id.* at pp. 12-13.

[51] Rebecca L. Moon, League of California Cities, letter to David Bainbridge, General Counsel of the Fair Political Practices Commission, October 25, 2022.

[52] *In re Kendrick* (Fair Pol. Practices Com. Dec. 22, 2022) Opinion No. O-22-002.

[53] *Ibid*.

[54] Cal. Code Regs., tit. 2, § 18438 (a).

[55] Former Cal. Code Regs., tit. 2, § 18438.

signed into law, the FPPC proposed, and eventually finalized, a regulation stating that section 84308 did not apply to contributions made or received prior to January 1, 1983.[56]

In our view, a court would likely defer to the newly promulgated regulation. It is within the delegation of legislative authority for the FPPC to promulgate regulations to carry out the purposes and provisions of the PRA.[57] And this regulation is reasonably necessary to clarify and interpret SB 1439 because of the concern and questions from stakeholders.

While a court is more deferential to a formally promulgated regulation than to agency interpretation, given the factors listed above, we believe a court would also likely give deference to the agency interpretation in the Kendrick Opinion. As stated above, the FPPC is the expert agency in interpreting the Political Reform Act. And the Kendrick Opinion adopts the long-standing position the FPPC took when section 84308 was first enacted in 1982. This interpretation is contemporaneous with the passage of SB 1439; indeed, the Kendrick Opinion was issued two months after the bill was signed into law, and weeks before it went into effect.

All of these factors support our view that the Legislature did not clearly intend SB 1439 to operate retroactively. The lack of express language in the statute or an unavoidable implication of retroactivity in the legislative history, the fact that retroactive application may prevent some officers from curing, and the FPPC itself taking the position in duly promulgated regulations that the statute operates only prospectively all support a finding that the statute does not operate retroactively. Therefore, we conclude that the disclosure, recusal, and cure provisions of SB 1439 do not apply to political contributions made before January 1, 2023.

---

[56] Cal. Reg. Notice Register 82, No. 42-Z, p. A-1 (former Cal. Code Regs., tit. 2, 18438(a)). This regulation was repealed in 1995 because it no longer had regulatory effect. (Cal. Reg. Notice Register 94, Vol. 52-Z, p. 1995: "Regulation 18438(a) was initially adopted when Section 84308 was first enacted and provided that contributions made and received prior to the effective date of the statute would not result in disqualification, even if the contributor appeared before the member within 12 months of the contribution. Since the effective date of the statute was January 1, 1983, and any obligation to disqualify regarding contributions received prior to the effective date would end as of January 1, 1984 (12 months), this provision no longer has any effect. . . . . Thus, it is necessary to repeal Regulation 18438.")

[57] Gov. Code, § 83112.